643 S.E.2d 70 (2007)
In the MATTER of J.E., B.E.
No. COA06-1553.
Court of Appeals of North Carolina.
April 17, 2007.
Tyrone C. Wade, Charlotte, for petitioner-appellee Mecklenburg County Department of Social Services.
Parker Poe Adams & Bernstein, LLP, by Scott S. Addison, Charlotte, for appellee Guardian ad Litem.
Annick Lenoir-Peek for respondent-appellant.
HUNTER, Judge.
On 7 August 2000, the Mecklenburg County Department of Social Services ("DSS") filed a petition alleging that J.E. and B.E. were neglected and dependent juveniles. DSS first became involved with the children on 4 June 1999 when it received a referral concerning problems of domestic violence between the children's parents. On 3 August 1999, DSS learned that the children's father had moved to California and respondent-mother and her boyfriend were using drugs in the presence of the children. Respondent-mother was also taking the children with her to purchase drugs. After DSS became involved in the case, respondent-mother continued to abuse drugs and was unable to maintain stable employment or housing. The children then went to live with their father in California. However, shortly after their arrival, their father was arrested on drug-related charges and they went to live with their paternal aunt. The children returned to North Carolina in July 2000, at which time respondent-mother moved into a hotel room with the children. When respondent-mother ran out of money and had to leave the hotel, she placed the children with their maternal grandparents. The grandparents provided care until 7 August 2000, at which time they brought the children to DSS and stated they could not care for them because the grandmother had recently undergone heart surgery. On 1 November 2000, nunc pro tunc 19 October 2000, the children were adjudicated neglected and dependent juveniles and custody was granted to DSS. In August 2001, the children were reunified with respondent-mother, although DSS retained legal custody. On 2 May 2002, legal custody was returned to respondent-mother.
On 12 July 2005, DSS filed another petition alleging that J.E. and B.E. were neglected and dependent juveniles. DSS noted that two younger siblings were adjudicated neglected and dependent on 6 January 2005, and that J.E. and B.E. had been placed with relatives in Virginia at that time. However, DSS further stated that respondent-mother had returned to North Carolina with J.E. and B.E. in March 2005. Since that time, DSS alleged that respondent-mother had left the children alone without proper supervision and abused controlled substances. On 11 July 2005, respondent-mother left the children alone and arrived at the S.A.I.L. program. DSS alleged that she was intoxicated and needed "to be transported to Detox and then into treatment."
On 16 August 2005, the children were once again adjudicated neglected and dependent. In the adjudication order, the trial court noted that respondent-mother
refused in open court to participate in Level II of the FIRST program and the Court is not convinced that the mother is committed to completing her substance abuse treatment. The court is concerned that the mother indicated that she "would choose her children over her drug dependency," however, she has shown little incentive to do [so]. The Court reminded the mother of the time line to permanence.
The court further noted that respondent-mother had not made progress towards reunification with her other children. Nevertheless, the trial court ordered that the plan for J.E. and B.E. be reunification.
*72 On 13 July 2006, the trial court held a permanency planning review hearing. The trial court noted respondent-mother's history of non-compliance and determined that it was unlikely the children would return to respondent-mother's home within the next six months. Accordingly, the trial court changed the permanent plan for the children to guardianship with a relative. Another permanency planning review hearing was held on 21 August 2006. At that hearing, the trial court placed J.E. and B.E. in the guardianship of their maternal grandparents. Respondent-mother appeals.

I.
Respondent-mother first argues that the trial court erred by placing the juveniles with their grandparents in Virginia. Respondent-mother contends that the trial court was required to follow the mandates of the Interstate Compact on the Placement of Children ("the Compact") as set forth in N.C. Gen.Stat. § 7B-3800 (2005). Specifically, respondent-mother contends that placing J.E. without a home study, and by removing custody from Mecklenburg County and closing the active case as to both children, the trial court violated the Compact. We disagree.
The Compact governs "interstate placements of children between North Carolina" and other jurisdictions that have adopted the Compact. N.C. Gen.Stat. § 7B-3800 (2005) (emphasis added). Thus, the statute only applies to those children that have been "placed" in a different jurisdiction within the meaning of the Compact. N.C. Gen.Stat. § 7B-3800. The Compact defines "placement" as
the arrangement for the care of a child in a family free or boarding home or in a child-caring agency or institution but does not include any institution caring for the mentally ill, mentally defective, or epileptic or any institution primarily educational in character, and any hospital or other medical facility.
N.C. Gen.Stat. § 7B-3800, Art. II(d). Accordingly, this Court has held that when a trial court does not place a child "in foster care or as a preliminary to adoption" the Compact does not apply. In re Rholetter, 162 N.C.App. 653, 664, 592 S.E.2d 237, 244 (2004).
Here, the trial court granted guardianship of the juveniles to their maternal grandparents in accordance with N.C. Gen.Stat. § 7B-600 (2005) at a permanency planning review hearing conducted pursuant to N.C. Gen. Stat. § 7B-906 (2005). Under the plain language of Article II(d), the court's actions did not constitute a placement mandating compliance with the Compact because it was not in foster care or as a preliminary to adoption. See Rholetter, 162 N.C.App. at 664, 592 S.E.2d at 243-44 (granting custody of children to their biological mother in South Carolina was not a placement obligating the trial court to follow the mandates of the Compact).
The dissent argues that Rholetter is not controlling because in that case the custody of the children was given to the biological mother in South Carolina and not the grandparents. This distinction is immaterial to the outcome of this case. The holding in Rholetter was based on the statutory definition of "placement," not on the fact that the person receiving custody was a relative. There could of course be a situation where placement with an out-of-state relative would require compliance with the Compact where it serves as a preliminary to adoption. See N.C. Gen.Stat. § 7B-3800, Art. II(d).
We also note that the dissent's reliance on In re L.L., 172 N.C.App. 689, 616 S.E.2d 392 (2005), is misplaced.[1] In that case, this Court held that "a child cannot be placed with an out-of-state relative until favorable completion of an ICPC [(Compact)] home study." Id. at 702, 616 S.E.2d at 400. That case, however, is distinguishable from the instant case. In re L.L. involved the application *73 of N.C. Gen.Stat. §§ 7B-505, 7B-506(h)(2), and 7B-903(a)(2) in a dependency hearing. Id. Each of those statutes specifically provides that "`[p]lacement of a juvenile with a relative outside of this State must be in accordance with the Interstate Compact[.]'" Id. The statutes governing the instant case are N.C. Gen.Stat. §§ 7B-600 and 7B-907, neither of which make reference to the Compact. In any event, a home study, conducted in accordance with the Compact in 2001 regarding both J.E. and B.E., made findings that their placement with the grandparents was appropriate.[2] Therefore, because the plain language of the Compact does not require its application to placement with a relative, and because none of the applicable statutes specifically require its application, we conclude that the trial court was not required to follow the mandates of the Compact. Accordingly, respondent-mother's assignment of error is overruled.

II.
We next consider whether the trial court's order fails to comply with N.C. Gen. Stat. § 7B-907 and N.C. Gen.Stat. § 7B-600. Specifically, respondent-mother argues that the district court failed to verify that the maternal grandparents understood the full implications of being named guardians and had adequate resources to care for their grandchildren. Accordingly, respondent-mother argues that the order appointing them as guardians must be reversed. We are not persuaded.
N.C. Gen.Stat. § 7B-600(c) states that: "If the court appoints an individual guardian of the person pursuant to this section, the court shall verify that the person being appointed as guardian of the juvenile understands the legal significance of the appointment and will have adequate resources to care appropriately for the juvenile." Id. Similarly, N.C. Gen. Stat. § 7B-907(f) requires the court to "verify that the person . . . being appointed as guardian of the juvenile understands the legal significance of the . . . appointment and will have adequate resources to care appropriately for the juvenile." Id. We note that neither N.C. Gen.Stat. § 7B-600(c) nor N.C. Gen.Stat. § 7B-907(f) require that the court make any specific findings in order to make the verification.
Here, the order appointing the maternal grandparents as guardians shows that the trial court received into evidence and considered a home study conducted by Grayson County (Virginia) Department of Social Services ("Grayson County"). In the home study report, Grayson County reported that:
[The maternal grandparents] have both raised children in the past. They are aware of the importance of structure and consistency in a child's life.
. . .
[The maternal grandparents] both appear to have a clear understanding of the enormity of the responsibility of caring for [B.E.] They are aware of the negative impact the past several years have had on his life. They are committed to raising [B.E.] and providing for his needs regardless of what may be required.
. . .
They have adequate income and are financially capable of providing for the needs of their grandson.
They are in good physical health.
Based on these findings, Grayson County recommended that the maternal grandparents be considered for placement of B.E. A home study conducted in 2001 regarding both J.E. and B.E. made similar findings and recommendations. Accordingly, based on its consideration of these reports, we conclude that the court adequately complied with N.C. Gen.Stat. § 7B-907(f) and N.C. Gen.Stat. § 7B-600(c).

III.
Lastly, we consider respondent-mother's argument that the trial court erred by granting guardianship of the juveniles to their grandparents. Respondent-mother contends that she completed all tasks required of her in order to be reunified with *74 her children and the court ignored evidence that the children could be returned to her home immediately. Further, respondent-mother asserts that guardianship was not in the children's best interests.
After careful review of the record, briefs, and contentions of the parties, we affirm. This Court has stated that: "All dispositional orders of the trial court after abuse, neglect and dependency hearings must contain findings of fact based upon the credible evidence presented at the hearing. If the trial court's findings of fact are supported by competent evidence, they are conclusive on appeal." In re Weiler, 158 N.C.App. 473, 477, 581 S.E.2d 134, 137 (2003) (citation omitted). Here, respondent-mother essentially argues that the trial court erred by finding that the children could not be immediately returned to her, and that it was not in the children's best interests for guardianship to be placed with the maternal grandparents. See N.C. Gen. Stat. § 7B-907(b)(1). However, in considering N.C. Gen.Stat. § 7B-907(b)(1), the trial court made the following findings:
3. . . . The mother is currently in substance abuse treatment through Drug Court. The Court finds that there is a great similarity between the first time the children were in custody and now. The children were ages eight years and five years in 2000 when the children were placed in YFS custody. The mother was arrested and the children were placed with the maternal grandparents. In 2000, the mother was complying with Drug Court and completed inpatient treatment. In 2000, the mother was working, had housing, had employment, completed family education, and was attending NA/AA meetings. The mother completed her F.I.R.S.T. assessment. The mother regained custody of the children in 2001. The mother tested dirty in February 2001 and within two years the children were placed with the maternal grandparents again. The children were placed in YFS custody again when they were thirteen and ten years. The mother again had marital issues, financial issues, lacked employment, lacked stable housing and had substance abuse issues.
4. The Court finds the parallel uncanny. The mother had a history of substance abuse and relapse, had marital problems, had financial problems, lacked employment, and lacked stable housing in 2000 when the children came into custody. The mother then complied and subsequently relapsed. The same factors existed in July 2005, when the children came into custody as in 2000. The Court recognizes the mother's recent progress and how similar the pattern is to 2000. The seven year history strongly suggests that it is highly unlikely that it will be possible for the juveniles to return home immediately or within six months.
The court further found that the maternal grandparents were willing and able to provide a permanent home for the children. We conclude that the court's findings were based upon clear, cogent, and convincing evidence and in accordance with N.C. Gen.Stat. § 7B-907. We further hold that based on its findings, the trial court properly concluded that guardianship was in the children's best interests. Accordingly, we affirm.
Affirmed.
Judge McCULLOUGH concurs.
Judge TYSON dissents in a separate opinion.
TYSON, Judge, dissenting.
The trial court failed to comply with the statutory mandates of the Interstate Compact on the Placement of Children ("ICPC"). The trial court's permanency planning review order that placed respondent-mother's children, J.E. and B.E., with their maternal grandparents in Virginia without compliance with ICPC is erroneous as a matter of law. I vote to reverse and respectfully dissent.

I. ICPC

A. Applicability and Compliance
The trial court failed to follow and comply with ICPC's statutory mandates. The ICPC was enacted by the North Carolina General *75 Assembly and controls the placement of juveniles by a North Carolina "sending agency" into a "receiving state." N.C. Gen.Stat. § 7B-3800 (2005). The ICPC defines these terms in Article II as:
(b) "Sending agency" means a party state officer or employee thereof; a subdivision of a party state, or officer or employee thereof; a court of a party state; a person, corporation, association, charitable agency or other entity which sends, brings, or causes to be sent or brought any child to another party state.
(c) "Receiving state" means the state to which a child is sent, brought, or caused to be sent or brought, whether by public authorities or private persons or agencies, and whether for placement with state or local public authorities of [or] for placement with private agencies or persons.
Id.
The ICPC further provides, in relevant part:
[Article III:] (d) The child shall not be sent, brought, or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child.
[Article V:] (a) The sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment, and disposition of the child which it would have had if the child had remained in the sending agency's state, until the child is adopted, reaches majority, becomes self-supporting or is discharged with the concurrence of the appropriate authority in the receiving state. . . .
[Article VIII:] This Compact shall not apply to: (a) the sending or bringing of a child into a receiving state by the child's parent, stepparent, grandparent, adult brother or sister, adult uncle or aunt, or the child's guardian and leaving the child with any such relative or nonagency guardian in the receiving state.
Id. (emphasis supplied).
This Court has interpreted the ICPC and stated:

[P]lacement of a juvenile with a relative outside of this State must be in accordance with the Interstate Compact on the Placement of Children, as set out in Article 38 of the Juvenile Code (the "ICPC"). . . . Under the ICPC, a child shall not be sent, brought, or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child. In other words, a child cannot be placed with an out-of-state relative until favorable completion of an ICPC home study. Further, the policies underlying the ICPC anticipate that states will cooperate to ensure that a state where a child is to be placed may have full opportunity to ascertain the circumstances of the proposed placement and the State seeking the placement may obtain the most complete information on the basis of which to evaluate a projected placement before it is made.
In re L.L., 172 N.C.App. 689, 702, 616 S.E.2d 392, 400 (2005) (emphasis supplied) (internal citations and quotations omitted).
On 7 October 1982, the North Carolina Attorney General opined that the ICPC applies "when a North Carolina child is sent by court, governmental agency, or child-placing agency to live with a parent, relative or a guardian in another party state." 52 N.C. Op. Att'y Gen. 22 (1982). "North Carolina courts, governmental agencies, and child-placing agencies are all `sending agencies' as defined in Article II(b). . . . In order for [the Article VIII] limitation to apply, the child must be both sent and received by a parent, relative, or guardian." Id. The clear and unambiguous text of the statute does not exempt DSS from compliance with ICPC when "sending" a child to a "receiving state." N.C. Gen.Stat. § 7B-3800.
The North Carolina Administrative Code also provides:

*76 Foster care services includes identifying children who require placement across state lines, ensuring that such placements are in suitable environments with persons or caretaking facilities having appropriate licenses and effecting such placements pursuant to the interstate compact on the placement of children [the ICPC]. "Placement" pursuant to the interstate laws means the arrangement for the care of a child in either a family or foster care facility but does not include any medical facility or facility licensed under standards adopted by mental health. Services include ongoing supervision. Services also include recruitment, study and development of foster families and child care facilities, assessment and periodic reassessment to determine if the home or facility meets the needs of children it serves, and consultation, technical assistance, and training to assist foster families and care facilities to expand and improve the quality of care provided.

N.C. Admin. Code tit. 10A, r. 71R.0907 (2007) (emphasis supplied).
Here, the trial court concluded the permanent plan for J.E. and B.E. was to be guardianship with their maternal grandparents who live in Virginia. The trial court ordered J.E. and B.E. to be placed in a receiving state outside of North Carolina and was clearly bound to comply with the statutory mandates of the ICPC. N.C. Gen.Stat. § 7B-3800; see In re L.L., 172 N.C.App. at 702, 616 S.E.2d at 400 ("[P]lacement of a juvenile with a relative outside of this State must be in accordance with the [ICPC]."); see also 52 N.C. Op. Att'y Gen. 22 (The ICPC applies "when a North Carolina child is sent by court, governmental agency, or child-placing agency to live with a parent, relative or a guardian in another party state."). In In re L.L., as here, an ICPC home study had to be completed before DSS placed the child out-of-state in Virginia. 172 N.C.App. at 702, 616 S.E.2d at 400.
The majority's opinion erroneously concludes the trial court was not required to follow the statutory mandates of the ICPC. Its reliance on In re Rholetter, 162 N.C.App. 653, 592 S.E.2d 237 (2004), is misplaced. In Rholetter, this Court concluded, "under the plain meaning of [N.C. Gen.Stat. § 7B-3800], the trial court was not obligated to follow the mandates of the [ICPC][]" because "[t]he trial court granted custody of the juveniles to their biological mother" in South Carolina. 162 N.C.App. at 664, 592 S.E.2d at 244. Here, J.E. and B.E. were not placed with their biological mother. In re Rholetter is distinguishable and inapposite to the facts at bar.

B. Required Home Study
Respondent-mother argues the trial court erred by placing J.E. and B.E. with their maternal grandparents in Virginia. Respondent-mother asserts the trial court violated the statutory mandates of the ICPC by placing J.E. out of state without a home study and removing custody from DSS and closing the active case concerning both J.E. and B.E. I agree.
Here, a 2006 ICPC home study was conducted on the maternal grandparents' residence. This ICPC home study reviewed and approved solely the placement of B.E. in Virginia with the maternal grandparents. Nowhere in the 2006 ICPC Virginia home study is J.E. addressed or approved for placement with the maternal grandparents. The 2006 ICPC Virginia home study also fails to discuss the impact of having two children in the home instead of one child or to address any special needs of J.E.
The trial court's order violated ICPC's statutory mandates by placing J.E. with an out-of-state relative without the favorable completion of an ICPC home study. See In re L.L., 172 N.C.App. at 702, 616 S.E.2d at 400 ("[A] child cannot be placed with an out-of-state relative until favorable completion of an ICPC home study.").
The trial court also erred by removing custody from DSS and closing the active case of both J.E. and B.E. The trial court's order stated it "maintain[ed] jurisdiction in this matter until [J.E. and B.E.] are eighteen" if the parties needed to approach the court for visitation issues in the future.
However, the order entered a permanent plan of guardianship and closed respondent-mother's case. No further hearings were *77 scheduled and no future obligations were imposed upon the DSS to monitor the children's progress or best interests. By concluding the permanent plan for both J.E. and B.E. to be guardianship with their maternal grandparents in Virginia, the trial court removed custody from and relieved DSS of further responsibility and gave the maternal grandparents full rights over the children.
The ICPC mandates, "The sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment, and disposition of the child which it would have had if the child had remained in the sending agency's state[.]" N.C. Gen.Stat. § 7B-3800, Art. V(a). On this ground alone, the trial court's order also violates ICPC's statutory mandates that the sending agency "retain jurisdiction . . . sufficient to determine all matters in relation to the custody, supervision, care, treatment, and disposition of the child." Id. The effect of the trial court's order is J.E. and B.E. are living in Virginia without knowledge or oversight by Virginia DSS. The file is closed in North Carolina. The children will receive no supervision from agencies in either state.

II. Conclusion
The trial court was required to comply with the statutory mandates of the ICPC. The majority's opinion erroneously affirms the trial court's permanency planning review order that placed J.E. and B.E. with their maternal grandparents in Virginia because: (1) DSS placed J.E. with an out-of-state relative without the "favorable completion of an ICPC home study" and (2) the trial court removed custody from DSS and closed the active case as to both J.E. and B.E, both in violation of ICPC. In re L.L., 172 N.C.App. at 702, 616 S.E.2d at 400; N.C. Gen.Stat. § 7B-3800, Art. V(a). For these reasons, individually or collectively, I vote to reverse the trial court's order. I respectfully dissent.
NOTES
[1] The dissent also relies on an Attorney General opinion from 1982 in which the Attorney General concluded that the Compact applies in situations where a trial court places children with relatives in a state other than North Carolina. 52 N.C.A.G. 22 (1982). This opinion, however, was drafted before any court in this State had reviewed the statutory language. Given the non-binding nature of Attorney General Opinions and this Court's jurisprudence on the Compact, we find the dissent's application of this opinion erroneous.
[2] We also point out that a second home study was done in 2006 for B.E. which made findings that his placement with the grandparents was appropriate, and respondent-mother does not dispute the validity of the home study as to B.E.