IN RE: X.M. & A.H.M.
No. COA09-346
Court of Appeals of North Carolina
Filed: August 4, 2009
This case not for publication
Dana C. Clemons, for petitioner-appellee Mecklenburg County Department of Social Services.
Pamela Newell Williams, for Guardian ad Litem.
Michael E. Casterline, for respondent-appellant mother.
STEELMAN, Judge.
Where the trial court considered DSS reports and a letter from the prospective guardian showing she understood the legal significance of the appointment and had adequate financial resources to care for the juveniles, the trial court complied with the requirements of N.C. Gen. Stat. §§ 7B-600(c) and -907(f). Where the trial court inquired into the paternity of the juvenile, made efforts to establish paternity, and made corresponding findings of fact, the trial court complied with the requirements of N.C. Gen. Stat. § 7B-506(h)(1).

I. Factual and Procedural Background
On 17 June 2008, the Mecklenburg County Department of Social Services, Division of Youth and Family Services (DSS) filed a juvenile petition alleging that C.M.'s (mother) five-year-old daughter, A.H.M., and two-year-old son, X.M., were neglected and dependent juveniles. The petition alleged, among other things, that DSS had received multiple referrals over several years related to mother's drug use, unstable housing, medical neglect, and lack of a permanent child care arrangement for the children. In a nonsecure custody order dated the same day, the trial court removed the children from the custody of mother and placed A.H.M. and X.M. with Diane B. (Diane), a family friend. The father of A.H.M. was incarcerated at the time of the petition, awaiting disposition of federal drug charges, and remained incarcerated for the duration of the juvenile proceedings. X.M.'s paternity has not been established, but his putative father was also believed to be incarcerated during all times relevant to the proceedings.
On 31 July 2008, the trial court adjudicated the children neglected and dependent, incorporating the parties' mediated settlement agreement into the order. The trial court continued the children's placement with Diane, but adopted the goal of reunification and allowed supervised visitation. The trial court also ordered mother to comply with her case plan, which contained the following objectives: (1) complete a F.I.R.S.T. (Families in Recovery to Stay Together) assessment and any recommendations; (2) successfully resolve any substance or alcohol abuse issues and remain clean and sober on an ongoing basis, including any recommendations for treatment and drug screening; (3) obtain a mental health assessment and follow through with any recommendations; (4) successfully complete parenting classes; (5) maintain stable employment and have sufficient income to meet the children's needs; (6) maintain appropriate, safe, and stable housing for the children; and (7) contact her social worker at least once per week regarding the status of her case plan.
On 15 October 2008, DSS filed a motion to show cause based on mother's failure to comply with previous court orders regarding her substance abuse treatment. The trial court ordered mother to appear and show cause why she should not be held in contempt of court for failing to comply with previous court orders and issued an order for arrest. On 5 November 2008, the trial court found mother to be in willful contempt, but continued judgment.
The trial court conducted a review hearing on 23 October 2008, and found that mother was noncompliant with parenting classes, substance abuse treatment, and domestic violence counseling. She also had a positive drug screen and failed to attain stable housing. Despite mother's lack of progress, the trial court maintained the permanent plan of reunification and ordered mother to comply with her case plan.
Following a hearing on 5 January 2009, the trial court entered a permanency planning order on 27 January 2009. Mother did not attend the hearing. In the order, the trial court found that mother was still noncompliant with substance abuse treatment and parenting classes, had a positive drug test, and failed to resolve the issues leading to the removal of her children. Further, the trial court concluded that DSS had made reasonable efforts to return A.H.M. and X.M. to mother, but that it was not in the children's best interests to return home. The trial court ceased reunification efforts, changed the permanent plan from reunification to guardianship, and granted Diane guardianship of the children. Mother appeals.

II. Guardianship Qualifications
In her first argument, mother contends that the trial court failed to verify that Diane, the prospective guardian, understood the legal significance of the appointment and had adequate financial resources to care for A.H.M. and X.M. We disagree.
Our juvenile code requires the trial court to verify certain things before appointing an individual as guardian of a juvenile:
If the court appoints an individual guardian of the person pursuant to this section, the court shall verify that the person being appointed as guardian of the juvenile understands the legal significance of the appointment and will have adequate resources to care appropriately for the juvenile.
N.C. Gen. Stat. § 7B-600(c) (2007). N.C. Gen. Stat. § 7B-907 provides for a similar procedure in a permanency planning hearing:
If the court . . . appoints an individual guardian of the person pursuant to G.S. 7B6-00, the court shall verify that the person .. . being appointed as guardian of the juvenile understands the legal significance of the . . . appointment and will have adequate resources to care appropriately for the juvenile.
N.C. Gen. Stat. § 7B-907(f) (2007). We have previously recognized that neither statute "require[s] that the court make any specific findings in order to make the verification." In re J.E., 182 N.C. App. 612, 61617, 643 S.E.2d 70, 73, disc. review denied, 361 N.C. 427, 648 S.E.2d 504 (2007). In In re J.E., the trial court received into evidence and considered home study reports of the juvenile's grandparents, who were subsequently appointed as guardians. We held that the findings in the home study reports were sufficient to demonstrate that the trial court complied with the requirements in N.C. Gen. Stat. §§ 7B-600(c) and -907(f). Id. at 617, 643 S.E.2d 73.
In the instant case, the order appointing Diane as guardian shows that the trial court received into evidence and considered DSS reports and a letter from that person. In the letter, she expressed her desire to be appointed as guardian of A.H.M. and X.M. stating, "I [have] had these kids for the majority of their lives and I feel like the kids will be in a stable environment with me. . . ."
A DSS court report from the 23 October 2008 review hearing confirms that Diane understood the responsibility of the undertaking, desired guardianship rather than a less permanent arrangement, and had sufficient financial resources to care for the children:
It is in the best interest of [A.H.M.] and [X.M.] to have permanence in their lives so that they can continue to flourish in life. The Department believes that this permanence with [Diane] is the best placement for the children. The children adamantly want to remain in this home. [Diane] adamantly wants the children placed with her and to become their guardian. [Diane] is not interested in becoming licensed as a foster parent. [Diane] will continue to receive Medicaid for the children. It was explained to [Diane] that she could not receive TANF for the children as she is not related to the children; however, she did not receive any monies prior to the Department's involvement and is financially able to maintain the children without assistance.

(Emphasis added). Based on the foregoing assessment, the findings in the DSS court reports, and the letter expressing her desire to be appointed guardian, we conclude that the trial court verified that Diane understood the legal significance of the appointment and had adequate financial resources to care for A.H.M. and X.M. The trial court complied with the requirements of N.C. Gen. Stat. §§ 7B-600(c) and -907(f). This argument is without merit.

III. Guardianship Before Paternity Established
In her second argument, mother contends the trial court erred by prematurely granting guardianship before X.M.'s paternity was established. We disagree.
N.C. Gen. Stat. § 7B-506(h)(1) provides the trial court shall:
Inquire as to the identity and location of any missing parent and as to whether paternity is at issue. The court shall include findings as to the efforts undertaken to locate the missing parent and to serve that parent, as well as efforts undertaken to establish paternity when paternity is an issue. The order may provide for specific efforts aimed at determining the identity and location of any missing parent, as well as specific efforts aimed at establishing paternity.
N.C. Gen. Stat. § 7B-506(h)(1) (2007). After reviewing the plain language of this provision, we are satisfied that the trial court complied with these requirements. We do not find any statutory mandate which requires the trial court to establish paternity prior to appointing a guardian for a juvenile. Rather, this statute simply requires the trial court to (1) inquire into the paternity of a juvenile and any efforts to establish paternity when it is at issue and (2) make corresponding findings of fact.
In finding of fact number 12, the trial court found that paternity had been established for A.H.M., but had not been established for X.M. The trial court also found that "DSS has made the following efforts to identify and/or locate and serve the missing parent and/or establish paternity: The name and identity of [X.M.'s] alleged father has not been provided . . . ." We note that mother could not conclusively identify the father of X.M. However, DSS made several attempts to establish X.M.'s paternity, but the issue was not resolved at the time of hearing. Moreover, the trial court had inquired into X.M.'s paternity during the prior hearings. Accordingly, we conclude that the trial court complied with the requirements of N.C. Gen. Stat. § 7B-506(h)(1). This argument is without merit.
Mother's remaining assignments of error set forth in the record and not argued in her brief are deemed abandoned. N.C.R. App. P. 28(b)(6) (2008).
AFFIRMED.
Judges WYNN and BRYANT concur.
Report per Rule 30(e).