IN THE MATTER OF: G.I.W.
No. COA09-1167
Court of Appeals of North Carolina.
Filed March 2, 2010.
This case not for publication
Paul W. Freeman, Jr., for petitioner-appellee Wilkes County Department of Social Services.
Robert W. Ewing, Jr., for respondent-appellant.
Deana K. Fleming, for Guardian Ad Litem.
STEELMAN, Judge.
The trial court's findings of fact that Mother had shown little progress in improving the conditions which led to the child's removal and that it was not possible for the child to be returned to her care within six months were supported by evidence of Mother's continued substance abuse and failure to comply with the requirements of her case plan. The trial court's findings support its conclusion of law that it was in the best interest of the child to modify the permanent plan to guardianship with C.L. and M.L. The trial court verified that C.L. and M.L. understood the legal significance of their appointments and that they had adequate resources to care for G.I.W. The trial court adopted an appropriate visitation plan for Mother.

I. Factual and Procedural Background
In December 2007, T.B.W. (Mother) and R.W. (Father) voluntarily placed G.I.W. with his paternal aunt and uncle (C.L. and M.L.). In February 2008, Mother and Father executed a Family Service Case Plan with the Wilkes County Department of Social Services (DSS). DSS services were offered to Mother and Father because of their use of controlled substances, and they had been evicted from their residence. DSS's case plan required Mother and Father to obtain a substance abuse assessment, follow recommendations for treatment, and obtain stable housing. Shortly after entering into his case plan, Father was arrested and was incarcerated on "DUI related" charges. Mother completed forty hours of substance abuse classes, but "tested positive for benzodiazepines and opiates on each drug screen." Mother did not have a prescription for these drugs.
On 5 July 2008, Mother was arrested for driving while impaired and no operator's license. At the time of her arrest, Mother
gave a false ID, her speech was slurred and she was having trouble keeping her eyes open. Her pupils were also pin point. Law enforcement found in her purse 6 pieces of straw with residue on them, a knife with residue and a calling card with residue. They also found the following drugs in the car for which which [sic] she had no prescription: suboxone, trazadone, and Adderol. She was also driving a vehicle which had fictitious tags and no registration in the [S]tate of North Carolina.
On 18 August 2008, DSS filed a petition alleging that G.I.W. was a neglected juvenile. On 10 September 2008, G.I.W. was adjudicated neglected and custody was granted to DSS, with placement continuing with C.L. and M.L.
The trial court held a review hearing on 1 December 2008. At that time, the trial court found that Mother was
recovering from significant injuries sustained by her in an automobile accident in September, 2008. She is currently unable to drive or to maintain employment due to the injuries suffered by her. The mother admits that she is currently physically unable to care for [G.I.W.]
Father remained incarcerated, but was expected to be released sometime that month. The trial court found that G.I.W. should remain in his placement with C.L. and M.L.
A permanency planning hearing was held on 18 May 2009. At the hearing, DSS and the guardian ad litem recommended that C.L. and M.L. be granted both legal and physical custody of G.I.W., as well as be appointed as his guardians. The trial court found that: (1) G.I.W. was "doing very well" in the home of C.L. and M.L., and they were "willing and able to continue providing care for [G.I.W.]"; (2) as a result of the automobile accident, Mother "remains unable to maintain employment and continues to take a variety of medicines, including two (2) narcotic pain killers"; (3) Mother was "not able to bend, lift or sit for long periods of time"; (4) Mother has only recently begun living independently and it was unclear how independent she was because she had moved from her aunt's home to a residence which she currently shared with Father; (5) Father had not completed parenting classes, had not obtained a substance abuse assessment, nor maintained contact with DSS; (6) both parents had failed drug screens, testing positive for amphetamines and methamphetamines; (7) Mother and Father had shown little progress in improving those conditions which caused the child to be removed from their home; and (8) it was not possible for the juvenile to return to Mother and Father's home within the next six months. On 9 June 2009, the trial court filed a permanency planning order, which granted legal and physical custody to C.L. and M.L., and named them as G.I.W.'s guardians. The trial court then converted the case to a civil custody action pursuant to N.C. Gen. Stat. § 7B-911. That same day, the trial court filed a separate order establishing civil custody. Mother appeals. Father is not a party to this appeal.

II. Standard of Review
Appellate review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and the findings support the conclusions of law. This Court is bound by the trial court's findings of fact where there is some evidence to support those findings, even though the evidence might sustain findings to the contrary.
In re S.J.M., 184 N.C. App. 42, 47, 645 S.E.2d 798, 801 (2007) (quotations and alteration omitted), aff'd per curiam, 362 N.C. 230, 657 S.E.2d 354 (2008). Unchallenged findings of fact are also binding on appeal. In re M.A.I.B.K., 184 N.C. App. 218, 222, 645 S.E.2d 881, 884 (2007).

III. Permanency Planning Order
The purpose of a permanency planning hearing is to "develop a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-907(a) (2009). At the conclusion of a permanency planning hearing, if the trial court determines the juvenile is not to return home, the trial court is required to consider the following criteria and make written findings of fact on any criteria relevant to the case:
(1) Whether it is possible for the juvenile to be returned home immediately or within the next six months, and if not, why it is not in the juvenile's best interests to return home;
(2) Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established, and if so, the rights and responsibilities which should remain with the parents;
(3) Where the juvenile's return home is unlikely within six months, whether adoption should be pursued and if so, any barriers to the juvenile's adoption;
(4) Where the juvenile's return home is unlikely within six months, whether the juvenile should remain in the current placement or be placed in another permanent living arrangement and why;
(5) Whether the county department of social services has since the initial permanency plan hearing made reasonable efforts to implement the permanent plan for the juvenile;
(6) Any other criteria the court deems necessary.
N.C. Gen. Stat. § 7B-907(b) (2009). At the conclusion of the permanency planning hearing, the trial court must make specific findings as to the best plan of care to achieve a safe, permanent home for the juvenile, which may include appointing a guardian for the juvenile pursuant to N.C. Gen. Stat. § 7B-600. N.C. Gen. Stat. § 7B-907(c) (2009).

IV. Challenged Findings of Fact
In her first argument, Mother contends that findings of fact 8, 10, 11, and 12 are not supported by competent evidence in the record. We disagree.
These findings are as follows:
8. The mother has applied for disability. The mother testified, and the Court finds, that she is not able to bend, lift or sit for long periods of time. She has only recently begun living independently. It is unclear how independent she is because she moved from her aunt's house to a residence which she currently shares with [Father].
. . . .
10. Both parents have failed drug screens, testing positive for amphetamines and methamphetamines. The parents did not have prescriptions for these medicines.
11. Although the Department of Social Services has been working with this family for over fifteen (15) months, the parents have shown little progress in improving those conditions which caused the child to be removed from them.
12. Because of the factors set forth above, it is not possible for the child to be returned to the home of a parent immediately or within the next six (6) months.
As to finding of fact 8, Mother argues that "the insinuation from this finding is that [she] is physically unable to care for [G.I.W.]" However, there is no statement in finding of fact 8 that Mother was unable to care for G.I.W. due to her injuries. Mother's own testimony at the permanency planning hearing established that she could not bend over continuously, was told not to lift more than five to ten pounds, and suffered from "continuous" pain. Mother also admitted that her injuries from her automobile accident made it difficult for her to work. Mother had applied for disability but was denied, and she was appealing that decision. Mother also testified that she had been living in her current residence since April 2008, but that she "went back and forth" between her home and her aunt's home located approximately fifty feet away. Father had also been living in the residence since he was released from prison in December 2008. Finding of fact 8 is supported by competent evidence.
As to finding of fact 10, Mother conceded that she had previously abused medications for which she did not have a prescription and failed drug screens. Finding of fact 10 is supported by competent evidence.
As to finding of fact 11, Mother contends that the issues which led to the removal of G.I.W. from her care, i.e. her substance abuse and lack of appropriate housing, had been adequately addressed since the adjudication of neglect. Mother's main assertion is that her substance abuse problems have been resolved because she was now only taking medication that had been prescribed for her injuries resulting from the automobile accident. However, we note that some of her prescribed medicines were ones which she had previously abused without a prescription. Further, in the permanency planning order, the trial court incorporated a court report prepared by DSS social worker Elizabeth Davis (Davis) dated 5 May 2009 and a guardian ad litem report dated 13 May 2009 into its findings. The court report states "[Mother] has had problems with substance abuse issues for some time now. She has attended Substance Abuse classes at New River. She is currently on a variety of pain medication and it is believed that she is abusing the prescriptions. She needs to cut down on her dependence on the prescription medications." (Emphasis added). The guardian ad litem report states "It was reported to this GAL that [Mother] over-medicates to the point she passes out for extended periods of time (up to 2 or more hours) and is impossible to wake." At the hearing, Davis testified that Mother had failed to undergo random drug screens that were required by DSS. Davis stated that "the last  three times we have called her in we have not been able to get in touch with her." Competent evidence in the record shows Mother had not resolved her substance abuse issue.
As to Mother maintaining stable housing, Davis made a blanket statement that Mother had done so. However, Davis admitted that she did not know how long Mother had resided at her current residence and had not conducted a review of the residence. Further, as stated above, the trial court found that Father had been residing with Mother since he was released from prison. Father had not complied with any portion of his case plan, including addressing his substance abuse issue. The guardian ad litem report stated that "[i]t was reported to this GAL that [Father] may not be using drugs every day but that he is using again." Father also stated that he refused to give up alcohol. Mother had not maintained stable housing.
In addition, Davis testified that Mother had not visited G.I.W. since December 2008 and had not consistently maintained contact with DSS. Davis's court report indicated that Mother's visits before December 2008 were only about once a month. The reason for her "scarce visits" was that she was told that she would need a drug screen prior to visitation and Mother could not be found when it was time for the test. Mother had also not paid any child support.
Although we acknowledge that Mother attended parenting class and attended some substance abuse treatment, we hold the trial court's finding of fact 11 is supported by competent evidence.
Mother next argues that the trial court erred in finding that it would not be possible for G.I.W. to return to Mother's home immediately or within the next six months because findings of fact 8, 10, and 11 are not supported by competent evidence. This argument is without merit. We hold the aforementioned evidence supports the trial court's finding of fact 12.

V. Best Interest and Reunification
In her second argument, Mother contends the evidence and findings of fact do not support the following conclusions of law:
1. It is in the best interest of the above-named child for his legal and physical custody to be granted to [C.L. and M.L.] and for [them] to be appointed Co-Guardians of the Person of the child.
. . . .
3. Any further efforts to eliminate the need for placement of the child would be futile and contrary to the child's need for a safe, permanent home within a reasonable time.
Mother reiterates her argument that findings of fact 8, 10, 11, and 12 are not supported by competent evidence, and that they cannot in turn support the trial court's conclusions. We have held otherwise. Further, the trial court's unchallenged findings of fact establish that G.I.W. had been placed in C.L. and M.L.'s home since December 2007. G.I.W. was "doing very well" in his placement and should be maintained there. C.L. and M.L. remained willing and able to continue to provide care for G.I.W. in a safe home. We hold the trial court's findings of fact support its conclusions of law that it was in the best interest of the child that C.L. and M.L. be appointed guardians and that any further efforts to eliminate the need for placement of the child would be futile.

VI. Guardianship Qualifications
In her third argument, Mother contends that the trial court erred by failing to verify that C.L. and M.L. understood the legal significance of their appointments and that they had adequate resources to care for G.I.W. pursuant to N.C. Gen. Stat. § 7B9-07(f). We disagree.
N.C. Gen. Stat. § 7B-907(f) (2009) provides:
If the court determines that the juvenile shall be placed in the custody of an individual other than the parents or appoints an individual guardian of the person pursuant to G.S. 7B-600, the court shall verify that the person receiving custody or being appointed as guardian of the juvenile understands the legal significance of the placement or appointment and will have adequate resources to care appropriately for the juvenile.
See also N.C. Gen. Stat. § 7B-600(c) (2009) (requiring the same). This Court has previously held that neither statute "require[s] that the court make any specific findings in order to make the verification." In re J.E., B.E., 182 N.C. App. 612, 616-17, 643 S.E.2d 70, 73, disc. review denied, 361 N.C. 427, 648 S.E.2d 504 (2007). In In re J.E., the trial court's order showed that it had received into evidence and considered home study reports of the child's grandparents, who were subsequently appointed as guardians. Id. at 617, 643 S.E.2d at 73. These reports established: (1) the grandparents had both raised children in the past and were aware of the importance of structure and consistency in the child's life; (2) the grandparents appeared to have a clear understanding of the enormity of the responsibility of caring for the child, and were committed to raising and providing for his needs regardless of what may be required; (3) the grandparents were financially capable of providing for the needs of the child; (4) the grandparents were in good physical health; and (5) DSS had recommended that the grandparents be considered for placement of the child. Id. We held that the trial court's consideration of the home study reports was sufficient to demonstrate that the trial court complied with the requirements in N.C. Gen. Stat. §§ 7B-600(c) and -907(f). Id.
In the instant case, C.L. and M.L. were present at the permanency planning hearing. Davis testified that G.I.W. had been living with C.L. and M.L. continuously for approximately one and a half years. Davis further testified that C.L. and M.L. were willing to continue to provide care for the child and wanted him to stay in their home. C.L. and M.L. have two natural children, which have a loving relationship with G.I.W. G.I.W. was enrolled in Pre-K for the upcoming school year. Davis testified that M.L. was employed with Walsh Tire. Davis had no concerns about G.I.W. remaining in this placement. Both the guardian ad litem and DSS recommended that G.I.W.'s custody and guardianship be placed with C.L. and M.L. The trial court also made the following unchallenged findings of fact:
3. [G.I.W.] is currently ___ years of age; and that he has been in the care and custody of the Wilkes County Department of Social Services since September, 2008. However, the child has been placed out of the parent's home since December, 2007. [G.I.W.] is living with his paternal aunt and uncle, [C.L. and M.L.] He is doing very well in this home; and that [C.L. and M.L.] remain willing and able to continue providing care for [G.I.W.]
4. Both the Guardian Ad Litem and the Department of Social Services are recommending that [G.I.W.'s] custody and guardianship be placed with [C.L. and M.L.]
. . . .
13. There are relatives who are willing to provide proper care and supervision for the child in a safe home.
14. The child is doing well in his current placement and should be maintained there.
. . . .
16. Because the child has been in placement with his aunt and uncle for an extended period of time, and the aunt and uncle do not wish to adopt the child at this time, adoption should not be considered. The Court is of the opinion that it would not be in the child's best interest to remove him from the home of his aunt and uncle.
Based upon the consideration of the evidence presented at the hearing and the unchallenged findings of fact, we hold that the trial court complied with N.C. Gen. Stat. §§ 7B-600(c) and -907(f).

VII. Appropriate Visitation Plan
In her final argument, Mother contends the trial court failed to adopt an appropriate visitation plan because it did not set specific days of the month for the visitation to occur or any time parameters for the visitation. Mother argues that the failure to do so impermissibly delegates the granting of visitation rights to the discretion of C.L. and M.L. We disagree.
N.C. Gen. Stat. §7B-905(c) provides that any dispositional order which leaves the juvenile in a placement "outside the home shall provide for appropriate visitation as may be in the best interests of the juvenile and consistent with the juvenile's health and safety." N.C. Gen. Stat. § 7B-905(c) (2009). The award of visitation rights is an exercise of a judicial function, and a trial court may not delegate this function to the custodian of a child. In re E.C., 174 N.C. App. 517, 522, 621 S.E.2d 647, 652 (2005) (citing In re Custody of Stancil, 10 N.C. App. 545, 552, 179 S.E.2d 844, 849 (1971)). "To give the custodian of the child authority to decide when, where and under what circumstances a parent may visit his or her child could result in a complete denial of the right and in any event would be delegating a judicial function to the custodian." Stancil, 10 N.C. App. at 552, 179 S.E.2d at 849.
[I]f the court does not find that the parent has by conduct forfeited the right of visitation and does not find that the exercise of the right would be detrimental to the best interest and welfare of the child, the court should safeguard the parent's visitation rights by a provision in the order defining and establishing the time, place and conditions under which such visitation rights may be exercised.
Id.; see also In re E.C., 174 N.C. App. at 523, 621 S.E.2d at 652 ("An appropriate visitation plan must provide for a minimum outline of visitation, such as the time, place, and conditions under which visitation may be exercised.").
In the instant case, the trial court ordered visitation as follows: "The parents of the children should continue to have twice monthly supervised visits at the Child Advocacy Center or supervised by [C.L. and M.L.] as previously ordered by the undersigned in March, 2009." In its March 2009, order the trial court entered a substantially similar visitation plan, but noted that "[e]ach visit shall be for one (1) hour." Although the trial court could have made more specific findings such as the exact time of day, or days of the week that visitation should occur, we conclude that the trial court's order concerning visitation does contain the "minimum outline" required by Stancil and In re E.C. The trial court did not improperly delegate the granting of visitation rights to the discretion of C.L. and M.L. This argument is without merit.

VIII. Conclusion
The trial court made all of the statutorily required findings of fact pursuant to N.C. Gen. Stat. § 7B-907, and those findings support its conclusions of law that it was in the best interest of the child to modify the permanent plan to guardianship with C.L. and M.L. The trial court complied with N.C. Gen. Stat. § 7B-907(f) and verified that C.L. and M.L. understood the legal significance of their appointments and that they had adequate resources to care for G.I.W. The trial court also adopted an appropriate visitation plan for Mother. The trial court's order is affirmed.
AFFIRMED.
Chief Judge MARTIN and Judge ELMORE concur.
Report per Rule 30(e).