IN THE SUPREME COURT OF NORTH CAROLINA

No. 212A23

Filed 23 May 2024

IN THE MATTER OF: K.B., A.M.H., M.S.H


Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 290 N.C. App. 61 (2023), affirming in part, vacating in part, and remanding an order entered 21 March 2022 by Judge S. Katherine Burnette in District Court, Vance County. Heard in the Supreme Court 20 February 2024.

*Tiffanie C. Meyers, for petitioner-appellee Vance County Department of Social Services.*

*Christopher M. Watford, for respondent-appellant mother.*

*Erica M. Hicks, for petitioner-appellee Guardian ad Litem.*

RIGGS, Justice.

When a child is removed from a parent's custody due to abuse, neglect, or dependency, the preference is to place the child in a safe environment with relatives while the parent works towards reunification. N.C.G.S. § 7B-903(a1) (2023). The legislature has evinced no statutory preference between different relatives, even out-of-state relatives. Because the legislature has not created a statutory preference system, when a trial court determines that an in-state relative is willing and able to provide proper care and supervision and the placement is in the best interest of the child, the court need not wait for a home study to rule out an alternative out-of-state

relative placement. Still, when the trial court orders a home study of a relative placement, social services must perform a timely evaluation of the potential placement. Timely evaluation and attention to these matters is critical to expedite permanency and stability for a child and to provide the court with the thorough information needed to evaluate whether the placement is in the best interests of the child.

## I. Factual & Procedural Background

In February of 2019, Vance County Department of Social Services (DSS) took nonsecure custody of Kelly, Amy, and Matt[1] because the parents had issues with homelessness, mental health, and domestic violence. At the time of removal, Kelly was 5 months old, Amy was 18 months old, and Matt was 2 years old. The children were temporarily placed in foster care.

At the dispositional hearing, on 20 February 2019, the trial court placed the children with their paternal great aunt (Great Aunt) and ordered that the "[m]aternal grandmother who lives in Georgia, shall be investigated as a possible placement." Shortly thereafter, the trial court adjudicated the children as neglected and dependent.

Initially, in March of 2019, DSS began the process of the out-of-state home study on the maternal grandmother (Grandmother) pursuant to the Interstate Compact on the Placement of Children (ICPC) by requesting birth certificates and

---

[1] The names are stipulated pseudonyms used pursuant to N.C. R. App. P. 42.

social security cards for the children. After this initial effort, DSS took no further action on Grandmother's ICPC home study until November 2021.

Generally, when children are in DSS custody, the trial court holds permanency planning hearings on a regular basis to assess the status of the parents and the children. *See* N.C.G.S. § 7B-906.1 (2023). For a host of factors, some clear to us and some not, that did not occur here: the court granted seven continuances before the first permanency planning hearing in this case. The first permanency planning hearing took over seven months to complete; the hearing was held over the course of several days between 19 August 2020 and 25 February 2021. At the conclusion of the hearing, the trial court ordered the placement of the children to remain with Great Aunt and again ordered DSS to "initiate the ICPC [home study] for the juveniles' [Grandmother.]" The trial court ceased reunification efforts with the parents and changed the primary plan for the children to guardianship.

The trial court held a second permanency planning hearing on 7 July 2021. Even then, DSS still had not initiated the ICPC home study for Grandmother. DSS recommended establishing guardianship with Great Aunt and closing the matter. The guardian ad litem, however, recommended that the ICPC home study for Grandmother be expedited. The trial court ordered that the "ICPC [home study] for [Grandmother] be expedited" and scheduled a subsequent hearing on 25 August 2021. However, the hearing on 25 August 2021 was delayed because "the results of the ICPC [home study had] not been received by [DSS]."

The third permanency planning hearing began on 18 October 2021.[2] On the first day of the hearing, DSS's attorney told the court that the ICPC home study request had "been sent to Georgia, but we do not have results." The DSS social worker testified that first day, stating that since her initial contact with the Georgia ICPC office in March 2019, she did not contact them again until one week before the hearing when she left them a message. When the DSS social worker was cross-examined on the second day of the hearing, two months later, she testified that she did not actually send the request for the ICPC home study to Georgia until 5 November 2021.

Grandmother testified at this hearing about her desire to provide a home for the children. She stated that as a retired veteran she has financial resources and income to provide for the children in a safe and stable home. Grandmother also testified that she has three minor children living with her, and one of her children requires special accommodations at school.

Grandmother explained she had researched therapy options for the children if they were to be placed in her home. She also testified that she was not contacted by Georgia DSS for the ICPC home study until 21 December 2021. The request from North Carolina contained an incorrect phone number for Grandmother, which delayed Georgia DSS's ability to contact her. Grandmother testified that she was working with Georgia DSS to complete all aspects of the ICPC home study expeditiously. At the close of the hearing, the court did not respond when the

---

[2] The hearing was held on 18 October 2021, 8 December 2021, and 9 February 2022.

children's mother's attorney inquired whether the ICPC home study would "still be proceeding."

After the hearing and before the completion of the ICPC home study, the trial court entered an order on 21 March 2022 granting guardianship of the children to Great Aunt. The trial court found that the children were "in need of permanency" and Great Aunt had "provided a safe, loving, caring and stable home" for the children for almost three years. As to Grandmother, the court noted that the children had infrequent contact with Grandmother in the three years since they had been placed with Great Aunt. The court noted that Grandmother already had three children in her home and placing the children in her care meant that there would be six children under the age of seventeen in the home. As to Great Aunt, the court found that she had met the children's education and development needs and removing them from her custody "would be basically removing them from the only home they have known." Additionally, the court found that there were family members in the local community willing to provide financial support for the children. The trial court did not terminate the parental rights of the children's mother (Mother) and left the matter open, noting that "any interested party may file a motion for review."

Mother appealed the order arguing that the trial court erred in entering an order granting guardianship to Great Aunt before Georgia DSS completed the ICPC home study of Grandmother. The majority at the Court of Appeals "conclude[d] there is no obligation under the ICPC that a home study be completed *to rule out* an out-of-

state relative as a placement option." *In re K.B.*, 290 N.C. App. 61, 65 (2023). The majority concluded that the trial court's findings supported the grant of guardianship to Great Aunt and affirmed the order of the trial court as to the guardianship. *Id.* The Court of Appeals also vacated the order in part and remanded for reconsideration of Mother's visitation. *Id.* at 69. Mother appealed the issue of guardianship.

## II.   Analysis

This case presents a narrow issue that arises when a district court is presented with in-state and out-of-state relative placements for children that are in the custody of the Department of Social Services. The question is whether the North Carolina statutes or the Interstate Compact on the Placement of Children require the district court to perform a home study to rule out an out-of-state relative if the trial court concludes that an in-state relative is willing and able to provide proper care and supervision *and* the placement is in the best interest of the child.

We hold that trial courts are not necessarily required to wait on completion of a home study to rule out the placement with an out-of-state relative if the trial court concludes that an in-state relative is willing and able to provide proper care and supervision *and* the placement is in the best interest of the children pursuant to N.C.G.S. § 7B-903(a1). But beyond the fact that the statutes do not specifically require the completion of a home study to rule out placement with an out-of-state relative, we agree with the Court of Appeals majority that "it may be an abuse of discretion in some cases *to rule out* a placement option, whether in-state or out-of-

state, without the benefit of a home study assessment" and "it may be an abuse of discretion in some cases to place a child with an in-state person without a home study assessment of that person." *In re K.B.*, 290 N.C. App. at 66. Thus, the analysis of whether the trial court erred in placing a child with an in-state relative before the completion of a home study on an alternative relative is performed under an abuse of discretion standard of review. We further affirm that the requirements of the ICPC apply to placements of children with out-of-state relatives including grandparents.

## A. Standard of Review

The question of whether a trial court has followed the plain language of a statute is a question of statutory interpretation that is ultimately a question of law for the courts. *Brown v. Flowe*, 349 N.C. 520, 523 (1998). We review conclusions of law de novo. *In re C.B.C.*, 373 N.C. 16, 19 (2019); *Matter of E.D.H.*, 381 N.C. 395, 398 (2022).

Further, the trial court's dispositional choices are reviewed for abuse of discretion. *In re J.M.*, 384 N.C. 584, 591 (2023). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re S.R.,* 384 N.C. 516, 520 (2023) (cleaned up) (quoting *In re C.B.*, 375 N.C. 556, 560 (2020)).

## B. Requirement for an ICPC Home Study under N.C.G.S. § 7B-903(a1)

When children must be removed from the custody of their parents, our statutes indicate that placement with a relative is the preferred disposition. N.C.G.S. § 7B-

903(a1). In a scenario where the trial court is deciding between two relative placements, N.C.G.S. § 7B-903(a1) does not require the court to wait on the final resolution of an ICPC study for an out-of-state relative. If the trial court finds that an in-state relative is willing and able to provide proper care and supervision, then the court may make findings and conclude that, in its discretion, placement with the in-state relative is in the best interest of the children.

When the court exercises jurisdiction over a juvenile due to abuse, neglect, or dependency, N.C.G.S. § 7B-903(a1) indicates a preference to place the child with relatives. The statute requires the court to consider the propriety of keeping the child in the child's community but otherwise does not recognize any preference between in-state and out-of-state relatives.

> In placing a juvenile in out-of-home care under this section, the court shall first consider whether a relative of the juvenile is willing and able to provide proper care and supervision of the juvenile in a safe home. If the court finds that the relative is willing and able to provide proper care and supervision in a safe home, then the court shall order placement of the juvenile with the relative unless the court finds that the placement is contrary to the best interests of the juvenile. In placing a juvenile in out-of-home care under this section, the court shall also consider whether it is in the juvenile's best interest to remain in the juvenile's community of residence. *Placement of a juvenile with a relative outside of this State must be in accordance with the Interstate Compact on the Placement of Children.*

N.C.G.S. § 7B-903(a1) (emphasis added).

The ICPC, referenced in N.C.G.S. § 7B-903(a1), is a uniform law enacted by all fifty states that governs interstate placement of children. N.C.G.S. § 7B-3800 (2023).

The General Assembly enacted the ICPC as N.C.G.S. §§ 7B-3800 to 3808 (2023), and the language of N.C.G.S. § 7B-903(a1) makes clear that placement of children with relatives outside of North Carolina must comply with the requirements found in the ICPC. N.C.G.S. § 7B-3800. The statutory language of N.C.G.S. § 7B-3800 reveals that a relevant purpose of the ICPC is to ensure that the authorities "of the state from which the placement is made may obtain the most complete information on the basis of which to evaluate a projected placement *before it is made*." N.C.G.S. § 7B-3800, art. I(c) (emphasis added).

To that end, the ICPC provides the trial court with information to ascertain if the out-of-state placement is in the best interest of the child by creating a "means of placing children across state lines with the same safeguards and services as are available when they are placed within their own state." N.C. Child Welfare Manual, *Interstate/Intercounty Services for Children*, 1 (December 2022), https://policies.ncdhhs.gov/document/interstate-compact-on-the-placement-of-children/ [hereinafter, ICPC Manual]. The receiving state performs a home study and provides an approval or denial of the placement as soon as practical—but no later than 180 days after the request is made and within twenty business days for an expedited approval process.[3] *Id.* at 58, 73–74. After a placement is approved, North Carolina retains final authority to determine whether to exercise the approved

---

[3] Notably, because the children were under the age of four at the time of removal, the ICPC home study initially qualified for an expedited review. ICPC Manual, at 34.

placement. *Id.* at 74.

The guiding consideration in the placement process is the best interest of the child. *See* N.C.G.S. § 7B-906.1(d1); N.C.G.S. § 7B-903(a1). For that reason, even when the court is considering placement with an out-of-state relative, the trial court may still conclude that placement with an in-state relative is in the best interest of the child based on any number of factors. But in some scenarios, the best-interest determination may require the completion of an ICPC home study before the trial court can make a placement. In this case, the majority at the Court of Appeals concluded that the order supported the trial court's discretionary decision to place the children with Great Aunt. *In re K.B.*, 290 N.C. App. at 66. The trial court found that Great Aunt's home was the only home the children have ever known, the children have bonded with Great Aunt, and that for all the reasons listed in the trial court's order, it was in the best interest of the children to remain in the current placement. *Id.* at 65.

Here, it is troubling that DSS seems to have unjustifiably delayed complying with the trial court's order to promptly conduct the ICPC study. *Id.* The trial court's discretion gives it the capacity and the obligation to hold parties accountable, including requiring DSS to show cause for repeatedly ignoring a court order. *See* N.C.G.S. § 7B-904(e) (2023). However, based on the facts of this case, we cannot conclude that the trial court's decision to proceed without a complete ICPC home study was an abuse of discretion. Grandmother already had three minor children

living in her home. Significantly, the children have not formed a bond with Grandmother due to infrequent contact between Grandmother and the children.[4]

To be sure, the trial court made findings of fact that support its award of guardianship to Great Aunt. The findings of fact establish that Great Aunt provided a safe, loving, and stable home for the children and supported the children's educational and developmental needs. The trial court found that the children were receiving therapy to address developmental delays and making appropriate progress to meet annual goals. Great Aunt had supported the children with the help of family members for almost three years. These findings of fact support the trial court's conclusion awarding guardianship of the children to Great Aunt.

It bears noting that while DSS provides trial courts with recommendations as to the proper placement for children, the ultimate decision as to the placement remains with the trial court. *See* N.C.G.S. § 7B-906.1 (recognizing that the court determines whether to maintain the juvenile's placement, order a different placement, or order any disposition authorized by statute). We have no doubt that, in most instances, DSS performs this difficult job admirably. But DSS may not, by delay, put a thumb on the scale of the court's best-interest evaluation or otherwise interfere with the court's ability to obtain all information relevant to the best-interest analysis by delaying compliance with court orders.

---

[4] Nevertheless, in a different factual scenario, a court may abuse its discretion by making conclusions about the best interests of the children without the additional information provided by a home study.

**C. ICPC Applicability to Placements with Out-of-State Grandparents**

The Court of Appeals' opinion highlighted some tensions in cases from that court addressing the applicability of the ICPC to placement with relatives, specifically grandparents, located outside the state lines. A prior decision from the Court of Appeals held that the ICPC did not apply to out-of-state placements with grandparents. *In re J.E.,* 182 N.C. App. 612 (2007). But *In re J.E.* relied upon now-outdated statutory language and a narrow reading of the ICPC definition of placement. *Id.* at 614. Thus, we take this opportunity to make clear that the ICPC does apply to an order granting guardianship to out-of-state grandparents.

A separate line of cases from the Court of Appeals aligns with this understanding of the ICPC's applicability, holding that placement with an out-of-state relative requires prior approval from the receiving state through the ICPC process. *See, e.g., In re L.L.*, 172 N.C. App. 689, 702 (2005) (holding a child cannot be placed with an out-of-state relative until favorable completion of an ICPC home study) *abrogated on other grounds by In re T.H.T.*, 362 N.C. 446 (2008); *In re V.A.*, 221 N.C. App. 637, 641 (2012) (holding the trial court could not place a child with her grandmother in South Carolina because South Carolina authorities did not approve the placement); *In re J.D.M.-J.*, 260 N.C. App. 56, 63 (2018) (acknowledging a conflict in the holdings of *In re J.E.* and *In re V.A.* and relying upon the holdings of *In re V.A.* and *In re L.L.* to conclude that placement with an out-of-state relative triggered the requirements of the ICPC). Our decision affirms the holding of these cases: before

the trial court can place an abused, neglected, or dependent child with an out-of-state relative, the trial court must first receive approval from the receiving state consistent with the ICPC.

### III.    Conclusion

In sum, our statutes express a preference to place abused, neglected, or dependent children with relatives who can provide proper care and supervision in a safe home.  ICPC home studies provide trial courts with crucial information to determine whether out-of-state relatives can provide proper care and supervision in a safe home and help those courts assess with full information what is in the best interest of the children.  Nevertheless, when a trial court considers a dispositional decision between relatives, that court is not required to wait on a completed ICPC home study to rule out an out-of-state relative when the trial court determines that an in-state relative can provide proper care and supervision in a safe home and the court is able to determine it is in the best interest of the child to be placed with that in-state relative before completion of that home study.  Lastly, we note that our decision does not disturb the Court of Appeals' vacatur and remand on the issue of Mother's visitation with the children.

AFFIRMED.