An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-431

NORTH CAROLINA COURT OF APPEALS

Filed: 16 September 2014

IN THE MATTER OF:

P.M.N.                                          Randolph County
A Minor Child                                   No. 10 JA 56


Appeal by Respondent from order entered 22 January 2014 by Judge Scott C. Etheridge in Randolph County District Court. Heard in the Court of Appeals 18 August 2014.

> *Erica Glass for Petitioner-Appellee Randolph County Department of Social Services.*
>
> *Rebekah W. Davis for Respondent-Appellant mother.*
>
> *Administrative Office of the Courts, by Appellate Counsel Tawanda N. Foster, for guardian ad litem.*


DILLON, Judge.

Respondent, mother of the minor child P.M.N. ("Penny"),[1] appeals from the district court's "Permanency Planning Review Order" awarding guardianship of the child to her foster parents (hereinafter "Mr. and Mrs. M.") and granting to Respondent a

---

[1] The parties stipulated to the use of this pseudonym to protect the child's privacy.

minimum of two, two-hour periods of supervised visitation per month. We affirm.

## I. Background

The Randolph County Department of Social Services ("DSS") obtained non-secure custody of six-month-old Penny on 5 May 2010, after filing a juvenile petition alleging she was abused, neglected, and dependent. By consent of the parties, the district court entered an adjudication of dependency on 19 April 2011, based on the parents' inability to care for Penny and lack of an appropriate alternative child care arrangement. In support of the adjudication, Respondent stipulated that she and Penny's father lacked stable housing and had "issues of domestic violence" in their relationship; that she had violated a safety plan with DSS by moving with Penny from a safety resource into an unapproved home; and that she and the father "receive disability benefits based upon their mental limitations[.]"

At the time it became involved with Penny, DSS was providing adult protective services ("APS") to Respondent and was her disability benefits payee. A psychologist from Carolina Piedmont Psychological Associates evaluated Respondent in June 2012 and diagnosed her as mildly mentally retarded with a Full Scale IQ of 62. Respondent had moderate impairments in

attention, concentration, and functional living skills, which required "some assistance" to allow her to live independently. The psychologist found Respondent's judgment to be "immature and impaired" and her general intellectual ability to fall within the first percentile for persons of her age cohort. He also noted that "three previous evaluations going back to 1997 have all resulted in similar scores."

In September 2011, the district court ceased reunification efforts as to Penny's father and established a permanent plan of reunification with Respondent. On 7 March 2012, the court ceased all reunification efforts and changed Penny's permanent plan from reunification with Respondent to adoption.

DSS moved to terminate the parental rights of Respondent and Penny's father on 26 March 2012. After a lengthy hearing, the district court entered an order on 26 September 2013, finding no grounds for termination as to Respondent. While acknowledging "the Mother'[s] limitations and cognitive impairment[,]" the court noted that she had "shown progress and made efforts." The court did adjudicate grounds to terminate the parental rights of Penny's father but concluded that termination would not be in the child's best interests, because it would foreclose the ability of DSS or Respondent "to obtain

support or any assistance" from him. The court denied DSS's motion, but continued Penny in DSS custody. At the next review hearing, the court established concurrent permanent plans of reunification with Respondent or guardianship and ordered DSS to resume reunification efforts.

Following a subsequent permanency planning hearing held 23 October 2013,[2] the district court changed Penny's permanent plan to guardianship, finding, *inter alia*, that Respondent's "well documented mental limitations" rendered her "barely able to take care of herself and . . . unable to adequately provide for the physical and mental well-being of [Penny,]" who was then four years old. Despite the "myriad of services . . . provided to assist [Respondent] in developing [parenting] skills[,]" the court found that she "has not benefitted, as would be required, to entrust the care of the minor child to her once again." Respondent's therapist had seen "no progress" by Respondent since January 2012, and had "greater concerns now than at the onset of the case in regards to the [Respondent's] judgment and decision making." "Three and one-half years after the child was

---

[2] Effective 1 October 2013, all review hearings after the initial permanency planning hearing are designated "subsequent permanency planning hearings" under N.C. Gen. Stat. § 7B-906.1(a) (2013). *See* 2013 N.C. Sess. Laws 129, §§ 25-26, 41 (June 19, 2013).

removed," the court found, Respondent "continues to need[] supervision during her weekly visitation[,]" is "unable to set boundaries[,]" and "is often at a loss as to how to proceed" with Penny, who "has made it very clear to [Respondent] that she believes her parents to be the foster parents."

The district court held a subsequent permanency planning hearing on 4 December 2013 and entered an order ceasing reunification efforts and granting guardianship of Penny to Mr. and Mrs. M. on 22 January 2014. Respondent filed timely notice of appeal from the order.

## II. Respondent's Appeal

"'Appellate review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and the findings support the conclusions of law.'" *In re R.A.H.*, 182 N.C. App. 52, 57-58, 641 S.E.2d 404, 408 (2007) (quoting *In re J.C.S.*, 164 N.C. App. 96, 106, 595 S.E.2d 155, 161 (2004)). Findings not specifically challenged on appeal are presumed to be supported by evidence and are binding. *See Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

In selecting an appropriate disposition for a juvenile adjudicated abused, neglected, or dependent, the district court

"solely considers the best interests of the child." *In re Pittman*, 149 N.C. App. 756, 766, 561 S.E.2d 560, 567 (2002). We review the district court's assessment of the child's best interests for abuse of discretion. *In re D.S.A.*, 181 N.C. App. 715, 720, 641 S.E.2d 18, 22 (2007). "An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." *In re Robinson*, 151 N.C. App. 733, 737, 567 S.E.2d 227, 229 (2002) (internal marks omitted).

## A. Visitation Schedule

Respondent first claims the district court abused its discretion by awarding her just two hours of supervised visitation with Penny twice per month. Under N.C. Gen. Stat. § 7B-905.1, "[a]n order that . . . continues the juvenile's placement outside the home shall provide for appropriate visitation as may be in the best interests of the juvenile consistent with the juvenile's health and safety." N.C. Gen. Stat. § 7B-905.1(a) (2013). Where the court establishes a guardianship, its order "shall specify the minimum frequency and length of the visits and whether the visits shall be supervised." *Id.* § 7B-905.1(c). The order may also provide for "additional visitation as agreed upon by the respondent and . .

. guardian." *Id.* Moreover, if the court retains jurisdiction in the cause, it must inform the parties of their right to file a motion for review of the visitation plan. *Id.* § 7B-905.1(d).

Respondent argues that the district court based its visitation plan upon "logistics and a desire to end the case rather than Penny's best interest." We disagree.

The court received evidence and made findings regarding Penny's increasingly adverse reactions to her visits with Respondent. Supplementing DSS's written report, the DSS social worker described Respondent's most recent visit with Penny, during which "the minor child was very difficult with the mother." Atypically for the child, Penny had rebuffed the social worker's attempt to redirect her and had "kicked [the social worker] as she had been kicking the mother[.]" The social worker discussed the visit with Penny's therapist, who had observed "similar behaviors in [Penny] and believes that this is her way of expressing her not understanding what's going on with . . . these community visits that [Respondent] has been getting, with [Penny] being brought over to [Respondent's] house, and not really understanding what's going on and why." The social worker also noted that Respondent had "told [Penny] that she would be living at her home with [Respondent] and

showed [Penny] her bedroom. And that has further confused the minor child." In light of these circumstances, DSS recommended reducing Respondent's visitation with Penny to "a minimum of once per month for one hour arranged between [Respondent] and the legal guardians and supervised by the legal guardians." Penny's guardian ad litem ("GAL") and Mr. and Mrs. M. concurred in this recommendation.

The social worker did remind the court that DSS would no longer facilitate Respondent's visitation if a guardianship was established. Because Mr. and Mrs. M. "both work outside of the home" and "have two other children [who] are actively engaged in community activities[,]" the social worker referred to the difficulty "[l]ogistically for them scheduling visits[.]" However, when asked whether this difficulty was "the reason for the recommendation to go from a minimum of four times a month to once a month[,]" Gillespie responded, "No, that is not the only reason. That is just one piece of it."

Penny's co-GAL testified that the GAL recommended reducing Respondent's visitation with Penny to one hour per month because of "the angst that the child is clearly exhibiting" as a result of the visits, not issues of scheduling convenience. "Given the escalation in [Penny's] behavior currently[,]" the co-GAL

explained, "I think [Penny] needs some time to work with the therapist to be able to resolve some of the conflict that she's dealing with."

Mr. M. explained that he and his wife "feel that [] once a month visitation at this point would be reasonable . . . mostly due to the fact that we want to make sure that [Penny] is very clear as to what her situation is and not confuse the situation in her mind." Mr. M. specifically noted concern about "comments by [Respondent] in regards to [Penny] returning home or sleeping in [her] bed or residence[.]" Mr. M. also expressed a reluctance to allow "someone other than ourselves to supervise the visits."

In its order, the district court expressly concluded that "[t]he best interest of the minor child will be served by" the following visitation plan:

> Supervised visitation between the Mother and the minor child shall occur a minimum of two hours twice per month. The legal guardians may allow individuals other than themselves to supervise visits between the Mother and the minor child in the community if the legal guardians believe such identified individuals to be appropriate . . . . It should be noted that it is the Court's preference that visitation by the Mother be expanded as the minor child becomes older.

The court did not foreclose additional community visits or visits of a duration longer than the prescribed two-hour minimum. Indeed, the order contemplates expanding Respondent's visitation in the future. The court further found that Respondent was "aware that the matter may be brought before the Court for review [at] anytime by the filing of a motion for review" by a party. *See* N.C. Gen. Stat. § 7B-906.1(n)(4) (2013). Because the order plainly reflects the court's proper exercise of discretion based on its assessment of Penny's best interests, Respondent's assignment of error is overruled.

Respondent also contends that the court abdicated its fact-finding duty under N.C. Gen. Stat. § 7B-906.1 by adopting "verbatim" the version of facts contained in the written reports submitted by DSS and the GAL. She characterizes the court's order as "resembl[ing] a rubber stamp of the opinion of DSS." Citing our decision in *In re J.S.*, 165 N.C. App. 509, 598 S.E.2d 658 (2004), Respondent suggests that the court's findings do not evince a proper exercise of discretion.

The purpose of a permanency planning hearing is to establish "the best plan of care to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-906.1(g) (2013). Following the hearing, "[t]he

court may maintain the juvenile's placement . . . or order a different placement, appoint a guardian of the person for the juvenile pursuant to G.S. 7B-600, or order any disposition authorized by G.S. 7B-903[.]" *Id.* § 7B-906.1(i). The court must consider the seven criteria set forth in N.C. Gen. Stat. § 7B-906.1(d) and "make written findings regarding those that are relevant[.]" If the court elects not to place the juvenile with a parent, it must also enter findings as to any of the six "relevant" factors in N.C. Gen. Stat. § 7B-906.1(e).

Although she refers to the district court's duty to make findings under the statutes, Respondent does not contend that the court failed to address any particular criterion set forth therein. Respondent instead argues, based on *In re J.S.*, that the court improperly delegated its fact-finding responsibility by relying so heavily on the written report submitted by DSS. We disagree.

In *In re J.S.*, this Court reviewed "a cursory two page" permanency planning review order in which the district court merely "incorporated [by reference] a court report from DSS and a mental health report on the oldest boy as a finding of fact." 165 N.C. App. at 511, 598 S.E.2d at 660. While affirming that "it is permissible for trial courts to consider all written

reports and materials submitted" at a dispositional hearing, we also stated that a "court should not broadly incorporate these written reports from outside sources as its findings of fact." *Id.* Because the court's few findings were "not sufficiently specific to allow this Court to review its decision and . . . also fail[ed] to comply with the statutory requirements" for a permanency planning review order, we remanded for additional findings. *Id.* at 513, 598 S.E.2d at 661.

Unlike the "cursory two page order" at issue in *In re J.S.*, the order *sub judice* includes forty paragraphs of detailed, single-spaced findings of fact covering almost eight full pages. *See In re C.M.*, 183 N.C. App. 207, 213, 644 S.E.2d 588, 593 (2007) ("In this case, the trial court considered the written reports, incorporated the written reports, and made findings based upon the reports."); *In re J.W., K.W.*, 173 N.C. App. 450, 455-56, 619 S.E.2d 534, 539-40 (2005). Rather than merely reciting allegations or broadly incorporating other sources, the district court made specific, affirmative findings regarding Respondent's history of abusive relationships, her hiding of these from DSS, her inability to recognize situations that were unsafe to herself or her child, and her persistent inability to benefit from services and apply learned information to new

situations. The court also made findings regarding Penny's three and one-half years in foster care and her bond with Mr. and Mrs. M., her escalating misbehavior during and after visits with Respondent, and her difficulties coping with and understanding "the current situation regarding the Mother and foster parents." We thus find *In re J.S.* to be easily distinguishable.

For purposes of appellate review, it is immaterial that many of the district court's findings of fact are copied from the DSS or GAL reports. *See In re R.A.H.*, 182 N.C. App. at 60, 641 S.E.2d at 409. "The standard of review that applies to an assignment challenging a dispositional finding is whether the finding is supported by competent evidence." *In re C.M.*, 183 N.C. App. at 212, 644 S.E.2d at 593. Inasmuch as "[s]uch reports constitute competent evidence," the court is free to "rel[y] upon them in reaching its finding of fact." *In re R.A.H.*, 182 N.C. App. at 60, 641 S.E.2d at 409. Moreover, Respondent's assertion that the court merely "rubber stamped" the DSS report ignores the fact that the court awarded Respondent substantially more visitation than was unanimously recommended by DSS, the GAL, and Mr. and Mrs. M. *Cf. In re K.S.*, 183 N.C. App. 315, 323-24, 646 S.E.2d 541, 545-46 (2007)

("[C]ontrary to respondent's contentions, the trial court did not adopt lock-stock-and-barrel DSS's summary and recommendations. Indeed, the trial court declined to follow DSS's recommendation[.]").

Respondent further notes that many of the court's findings concern events that occurred during the course of the case, rather than "current" information. She then faults the court for failing to incorporate any findings from its 26 September 2013 order denying DSS's motion to terminate her parental rights. Neither of these objections has merit. It is entirely proper, if not imperative, for the court to consider the history of the case when determining the appropriate disposition for a juvenile. Furthermore, we find no indication that the court disregarded its 26 September 2013 order in its account of the case history. The findings describe Respondent's active participation in parenting classes, a domestic violence support group, and individual therapy, as well as her consistent visitation with Penny. They credit Respondent's "progress in caring for herself," including her transition from APS payee services to managing her own finances in October 2012. However, the court found that Respondent's "judgment and ability to benefit from supports has waxed and waned over the time that the

minor child has been in the custody of RCDSS, since May 3, 2010[,]" but that she "has not benefitted, as would be required, to entrust the care of the minor child to her once again."

Respondent also suggests that the district court should have ordered additional "community visits during which [Respondent] was the parent instead of visits during which [Mr. or Mrs. M.] remained the parent in charge" and should have required that Respondent be included in Penny's therapy. However, the court heard no evidence that Penny's best interests demanded these activities. To the contrary, the evidence indicated that Penny was struggling with the uncertainty created by three and one-half years in foster care and by the ambiguity of her relationships with Respondent and Mr. and Mrs. M. The terms of Respondent's visitation reflect the court's thoughtful balancing of her rights as a parent with Penny's need for a "safe, permanent home within a reasonable amount of time." N.C. Gen. Stat. § 7B-100(5) (2013). Accordingly, we find no abuse of discretion.

B. Waiver of Review Hearings

Respondent next claims the district court erred by waiving further review hearings in this cause pursuant to N.C. Gen. Stat. § 7B-906.1(n).[3] Subsection (n) provides:

> [T]he court may waive the holding of hearings required by this section . . . if the court finds by clear, cogent, and convincing evidence each of the following:
>
> (1) The juvenile has resided in the placement for a period of at least one year.
>
> (2) The placement is stable and continuation of the placement is in the juvenile's best interests.
>
> (3) Neither the juvenile's best interests nor the rights of any party require that review hearings be held every six months.
>
> (4) All parties are aware that the matter may be brought before the court for review at any time by the filing of a motion for review or on the court's own motion.
>
> (5) The court order has designated the relative or other suitable person as the juvenile's permanent custodian or guardian of the person.

*Id.*

We find no error here. Paragraph 40(a)-(e) of the order includes all of the necessary findings required by N.C. Gen. Stat. § 7B-906.1(n)(1)-(5). The district court explicitly made

---

[3] Subsection 7B-906.1(n) differs only slightly from former N.C. Gen. Stat. § 7B-906(b) (2011), which was repealed effective 1 October 2013. *See* 2013 N.C. Sess. Laws 129, §§ 25, 41.

these findings "[b]y clear, cogent, and convincing evidence," as prescribed by subsection (n). Of these findings, Respondent challenges only the determination that Penny's best interests did not "require that review hearings be held every six months[.]" *See id.* § 7B-906.1(n)(3). Given the lengthy history of this case, the stability of Penny's placement with Mr. and Mrs. M., and the minor child's obvious need for permanence, we find ample support for the finding that Penny's best interests no longer required regular review hearings. Nor does Respondent assert that her rights as a parent required additional hearings, inasmuch as she retained the right to file motions for review. We thus find no basis for Respondent's claim that the court should have conducted "at least one more review."

### C. Guardianship

Respondent next claims that the district court abused its discretion in awarding guardianship of Penny to Mr. and Mrs. M. Respondent repeats her prior assertion that the court failed to make independent findings of fact when it copied language from the report filed by DSS. She also asserts that the court failed to consider her "growth and progress" in avoiding abusive relationships, managing her finances, and improving her parenting skills. Respondent notes she "was never given a

chance to care for Penny" during "a trial placement or even overnight visits."

Pursuant to N.C. Gen. Stat. § 7B-600(a) (2013), the district court may "appoint a guardian at any time during the juvenile proceedings . . . when it finds such appointment to be in the juvenile's best interests." *In re E.C.*, 174 N.C. App. 517, 520, 621 S.E.2d 647, 650-51 (2005). Appointment of a guardian at a permanency planning review hearing is explicitly authorized by N.C. Gen. Stat. § 7B-906.1(j).[4] The court has broad discretion to determine a juvenile's best interests, *In re D.S.A.*, 181 N.C. App. 715, 720, 641 S.E.2d 18, 22 (2007), and an authorized disposition based thereon "will not be disturbed absent clear evidence that the decision was manifestly unsupported by reason." *In re N.B.*, 167 N.C. App. 305, 311, 605 S.E.2d 488, 492 (2004).

Initially, we note that Respondent appeared to consent to the guardianship at the conclusion of the hearing. In urging the court to grant her visitation beyond the one hour per month recommended by DSS, her counsel stated as follows:

> [Respondent] understands that guardianship is coming. I mean we're not – *we're beyond*

---

[4] Subsection 7B-906.1(j) is identical to former N.C. Gen. Stat. § 7B-907(f), which was repealed effective 1 October 2013. *See* 2013 N.C. Sess. Laws 129, §§ 25, 41.

> *contesting that.* It's something actually that we attempted to discuss before we went through six days in a termination hearing. I'm just asking for the Court to put in place enough structure that will provide [Respondent] the opportunity to stay involved with her child.

(emphasis added).

Assuming, *arguendo*, that Respondent did not waive this issue or invite the alleged error, we find no abuse of discretion. As noted above, the fact that the court's findings of fact quote from the DSS report does not undermine their validity. *See In re R.A.H.*, 182 N.C. App. at 60, 641 S.E.2d at 409. The findings describe Respondent's persistent struggles with life skills, judgment, and decision-making. They further underscore the stability and success of Penny's foster placement as well as the bond Penny developed with Mr. and Mrs. M. after three and one-half years in their care. The court expressly found and concluded that Penny's best interests would be served by her continued placement with Mr. and Mrs. M. and by their appointment as her guardians. Both DSS and the GAL agreed with the court's assessment.

Finally, Respondent claims the district court awarded guardianship to Mr. and Mrs. M. without properly verifying that they "understand[] the legal significance of the appointment and

will have adequate resources to care appropriately for the juvenile[,]" under N.C. Gen. Stat. §§ 7B-600(c) and 7B-906.1(j). We have previously held these provisions do not "require that the court make any specific findings in order to make the verification." *In re J.E.*, 182 N.C. App. 612, 616-17, 643 S.E.2d 70, 73 (2007). We conclude that the court's findings were sufficient.

The order includes the following language addressing the verification requirement:

> The Court has verified that [Mr. and Mrs. M.] understand the legal significance of the appointment of guardianship regarding the minor child. The[y] have adequate resources to care appropriately for the minor child. [Mrs. M.] is employed and receives compensation for her employment, and though at this time [Mr. M.] has been laid off from his previous employment, he receives unemployment compensation.

Respondent challenges these findings as unsupported by the evidence and otherwise inadequate. Specifically, she argues the evidence did not show that Mr. and Mrs. M. understood their obligation to honor any future expansion of visitation ordered by the court. Respondent characterizes the court's assessment of the guardians' financial resources as "perfunctory[.]"

Competent evidence supports the challenged findings. Mr. M. testified that he and Mrs. M. had served as Penny's foster

parents since 3 May 2010, that they understood the guardianship arrangement recommended by DSS, and that they wished to have guardianship of the child. In addition to expressing his understanding of and willingness to comply with the visitation schedule recommended by DSS, Mr. M. testified as follows regarding Respondent's ongoing right to visitation:

> Q. Are you willing to continue to make that type of visitation available between [Penny] and her mother, visitation that would be well beyond a simple hour a month?
>
> A. Well, *if it were consistent with the court order* at the – anywhere from – if they were as to an hour or two to four hours, we'd be willing to provide access for those visits.

(emphasis added). While Mr. M. balked at the suggestion of "having someone other than ourselves supervise the visits[,]" particularly a person the guardians had never met, he agreed to "possibly increasing visitation if that was something that was left available." In its report to the court, DSS noted that it had discussed the legal guardianship with Mr. and Mrs. M., including the issue of "continued visitation . . . should the court accept the Department's recommendation regarding Guardianship." The DSS social worker testified that Mr. and Mrs. M. had generally "gone above and beyond what the minimum of the court order has said in regards to visits."

Insofar as Respondent suggests the court erroneously found that Mr. and Mrs. M. were aware of her right to file a motion seeking additional visitation, we note the following exchange between the court and their counsel:

> THE COURT: My understanding is is once I've deemed them guardians, if that's what I choose to do, then the only hearing that gets done after that is if someone files a motion to have them removed for acting inconsistent with their responsibilities as guardian.
>
> [COUNSEL FOR MR. AND MRS. M.]: Right, and certainly i[f] visitation is an issue, they can bring that issue forward as well as the mother.

Though Respondent also posits several hypothetical scenarios in her brief to this Court, N.C. Gen. Stat. §§ 7B-600 and 7B-906.1(j) do not require the court to review every possible future contingency with the guardians to ensure their understanding of the legal ramifications thereof.

The district court properly verified that Mr. and Mrs. M. had adequate resources to care for Penny. The court's findings about the guardians' income accurately reflect the testimony of Mr. M., who also affirmed that he and his wife had "the financial means to care for [Penny.]" The court was also aware that Mr. and Mrs. M. had cared for Penny since May 2010, and had previously been recommended as an adoptive placement by DSS and

the GAL. *Cf. In re J.E.*, 182 N.C. App. at 617, 643 S.E.2d at 73 (allowing verification based on pre-existing evidence such as a DSS home study). The GAL reported to the court that Mr. and Mrs. M. had "properly attended to" any issues that arose with Penny during the placement. The evidence and the court's findings were sufficient to satisfy N.C. Gen. Stat. §§ 7B-600(c) and 7B-906.1(j).

## III. Conclusion

The district court did not abuse its discretion in awarding Respondent two hours of supervised visitation twice per month, awarding guardianship to Mr. and Mrs. M., and waiving future review hearings. The court made sufficient findings of fact supported by competent evidence. Accordingly, we affirm the order.

Affirmed.

Judges HUNTER, Robert C., and DAVIS concur.

Report per Rule 30(e).