IN THE MATTER OF: E.K., K.K., & E.G., MINOR CHILDREN

No. COA09-1057

(Filed 2 February 2010)

**1. Child Abuse and Neglect— permanency planning order— secondary placement with grandmother—sufficiency of conclusions**

A portion of a permanency planning order granting secondary placement of juveniles with their grandmother was reversed where the conclusions were not supported by the findings and were contradictory of each other.

**2. Child Abuse and Neglect— permanency planning order— delays—remedy**

An assignment of error to a permanency planning order based on failure to adhere to the time line required by the juvenile code was overruled where the proper remedy for DSS was to file a petition for writ of *mandamus* rather than raising the issue after additional delay on appeal. However, the significant delay before entry of the permanency planning order was not condoned, even with the case load demands imposed by the budget crisis.

*Appeal by the Caldwell County Department of Social Services from order entered 10 June 2009 by Judge C. Thomas Edwards in Caldwell County District Court. Heard in the Court of Appeals 28 December 2009.*

*Lauren Vaughan for petitioner-appellant Caldwell County Department of Social Services.*

*Pamela Newell Williams for guardian ad litem.*

*Betsy J. Wolfenden for respondent-appellee mother.*

*Joyce L. Terres for respondent-appellee father.*

IN RE E.K., K.K., & E.G.

[202 N.C. App. 309 (2010)]

STEPHENS, Judge.

The Caldwell County Department of Social Services ("DSS" or "Caldwell DSS") appeals from a juvenile permanency planning review order entered 10 June 2009, implementing a permanent plan of joint custody of juveniles E.K., K.K., and E.G. (collectively "the juveniles") with their foster parents (referred to by the pseudonym "the Barnes") and their maternal grandmother ("the grandmother"). The permanent plan also designates the Barnes as the primary placement and the grandmother as the secondary placement for the juveniles. On appeal, DSS contends that the trial court abused its discretion by designating the grandmother as a joint custodian and secondary placement because the court's order was not supported by sufficient findings of fact or conclusions of law, and failed to follow the applicable statutory time lines when it entered the permanency planning order. We reverse in part and affirm in part.

## I. Procedural History

Caldwell DSS first became involved with the family in October of 2004 when E.G. accused her stepfather[1] of sexually abusing her. That claim was later substantiated. Respondent-mother relocated to Davie County, and in February 2005, the Davie County Department of Social Services ("Davie DSS") received a report that K.K. had bruises on her legs. E.G. later accused respondent-mother's new boyfriend of molesting her. On 9 May 2005, Davie DSS obtained non-secure custody of the juveniles and placed them in foster care with the Barnes. Davie DSS also filed petitions alleging that the juveniles were abused and neglected.

On 4 October 2005, the district court entered an order adjudicating E.G. abused and neglected and E.K. and K.K. neglected. The court ordered the children to remain in the custody of Davie DSS and further ordered that the permanent plan for the juveniles be reunification with respondent-parents. On 3 January 2006, however, the district court ordered that Davie DSS cease reunification efforts with respondent-fathers. The permanent plan remained reunification with respondent-mother.

On 29 February 2006, the grandmother filed a motion to intervene and to be considered as a placement option, and the district court allowed the motion. On 4 August 2006, the district court entered a review order placing the juveniles in the physical custody of the

---

1. E.G.'s stepfather, who is not a party to this appeal, is the father of E.K. and K.K. E.G.'s biological father is a party to this appeal.

IN RE E.K., K.K., & E.G.

[202 N.C. App. 309 (2010)]

grandmother, pending the completion of her new home in Caldwell County. The permanent plan remained reunification with respondent-mother, and the case was transferred to Caldwell DSS.

On 23 August 2006, the Barnes filed a motion seeking to intervene and to gain guardianship over the juveniles. The juveniles were moved into the grandmother's care on 25 August 2006. In an order entered 7 December 2006, the district court allowed the Barnes' motion to intervene and set the case for a permanency planning review hearing. The case was continued numerous times throughout the rest of 2006 and the first half of 2007.

On 12 March 2008, the district court entered a permanency planning order, based on evidence received in partial hearings conducted in 2006 and 2007. The district court continued custody of the juveniles with Caldwell DSS, authorized Caldwell DSS to arrange for foster care, and approved placement with the Barnes. The district court also ordered Caldwell DSS to cease reunification efforts with respondent-mother, and ordered that respondent-fathers have no visitation with the juveniles. Finally, the district court ordered that a permanent plan be established within thirty days, and set the matter for a permanency planning hearing on 9 April 2008.

Following the 12 March 2008 order, the case was again continued for more than a year before it came on for hearing on 6 May 2009.[2] At the hearing, the trial court heard testimony from a social worker, the grandmother, and other family members. The Barnes did not testify. On 3 June 2009, the trial court entered a new permanency planning order, and entered an amended order on 10 June 2009. The trial court changed the permanent plan to shared custody of the juveniles between the Barnes and the grandmother, with primary placement with the Barnes and secondary placement with the grandmother, in spite of its conclusion that "[t]here are no relatives who are willing and able to provide proper care and supervision of the juveniles in a safe home." The trial court also ordered visitation for the grandmother, and set numerous rules of conduct for both the Barnes' and the grandmother's family. Caldwell DSS filed written notice of appeal. On 16 June 2009, this Court allowed Caldwell DSS's motion for temporary stay, and on 8 July 2009, this Court allowed Caldwell DSS's petition for writ of supersedeas, staying the 10 June 2009 permanency planning order pending the outcome of this appeal.

---

2. The reasons cited for the numerous continuances included a Notice of Appeal which was filed and later withdrawn by the grandmother, the unavailability of the Barnes' attorney, and the court's need for more time to render a decision.

## II. Discussion

### A. Conclusions of Law Unsupported by Findings of Fact

[1] We first address Caldwell DSS's argument that the trial court's order designating the grandmother as a secondary placement is not supported by its findings of fact and conclusions of law. We agree, and accordingly reverse this portion of the trial court's order.

" 'The purpose of a permanency planning hearing shall be to develop a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time.' " *In re D.C.*, 183 N.C. App. 344, 355, 644 S.E.2d 640, 646 (2007) (quoting N.C. Gen. Stat. § 7B-907(a) (2005)). The Juvenile Code enumerates several factors that the trial court is required to consider at a permanency planning hearing, including:

> Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established, and if so, the rights and responsibilities which should remain with the parents[.]

N.C. Gen. Stat. § 7B-907(b)(2) (2009). "Appellate review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and [whether] the findings support the conclusions of law." *In re J.C.S.*, 164 N.C. App. 96, 106, 595 S.E.2d 155, 161 (2004).

In its permanency planning order, the trial court incorporated the findings of fact from the order entered 12 March 2008, which included findings that the minor children's grandmother was not involved with the children, "and in fact, absent from the State of North Carolina, for the period from summer of 2005, through February, 2006, while [the minor children] were in [DSS's] custody[;]" that as of 15 March 2006, DSS had attempted reasonable efforts to place the juveniles with family members, but DSS did not recommend the grandmother's home as a placement because DSS did not believe the grandmother was an appropriate placement for the children; that the Kinship Care Initial Assessment of 20 June 2005 did not approve the grandmother's home for placement of the juveniles due to concerns that the grandmother had very little involvement with her daughter and the children prior to their coming into DSS's custody; that after the Kinship Care Initial Assessment, DSS did not hear from the grandmother until September 2005, at which time Davie County Juvenile Court ordered a home study of the grandmother; that despite numerous efforts by DSS from

**IN RE E.K., K.K., & E.G.**

[202 N.C. App. 309 (2010)]

September through December 2005 to complete a home study on the grandmother's home, no contact was made; and that the grandmother had no further contact with DSS until February 2006. The incorporated order of 12 March 2008 also included findings that

> [p]lacement with [the grandmother and her husband] is not in the best interest of [the juveniles] for the following reasons, among others: i) [the grandmother and her husband] were originally disapproved as a placement for [the children] in 2004 when an initial home study was conducted, and were not recommended for placement again in March, 2006, and in April, 2006, after a Kinship Care Assessment with the grandmother . . . was conducted. [DSS] in March and in April, 2006, recommended that [the grandmother] not be considered for placement and that [DSS] be relieved of efforts to unify the juveniles with [the grandmother]; ii) [the grandmother and her husband] had no contact with [the juveniles] for approximately eight months from the Summer of 2005 through March, 2006, while the three juveniles were in [DSS's] custody; iii) [the juveniles] had no substantial relationship with [the grandmother's] new husband, . . . whom she married after her Motion to Intervene was filed; iv) [the grandmother] had a strained relationship with her minor daughter, . . . who vacated [the grandmother's] residence during the pendency of this action; and v) [the juveniles] have resided with the [Barnes] for 29 of the last 34 months. . . . Relative placement of the juveniles with their maternal grandmother . . . is not in the best interest of the juveniles. Relative placement is not indicated based on the foregoing findings of fact.

In addition to the incorporated findings of the 12 March 2008 order, the trial court made the following pertinent findings of fact in its 10 June 2009 order:

> 7. [DSS's] concerns included among [other] things, the want of a toothbrush in the home of the [grandmother]; the discussion of the court case by the [grandmother and her husband] with the minor children; and concerns about [the grandmother's daughter] living in the home. [DSS] also expressed concerns that [the grandmother] did not exercise independent judgment separate and apart from her new husband, . . . [an] uncommon phenomenon in the 21st century. [DSS] also expressed concerns with [the grandmother's daughter's] desire to live with her biological father.

IN RE E.K., K.K., & E.G.

[202 N.C. App. 309 (2010)]

8. That the October, 2006, report of [DSS] suggests that the minor children, after approximately 2 months with the [grandmother and her husband], appeared more reserved and withdrawn. That, [DSS] also expressed concerns of [the grandmother's] reports of some prior history involving domestic violence with a former husband. That another area suggested of concern by [DSS] was the recent marriage of [the grandmother to her husband] and [the fact that her husband is not] biologically related to the minor children. As a consequence of [the grandmother's husband's] recent induction as a member of the family, [DSS] was also concerned with a lack of significant relationship with the three minor children. In addition, [DSS] expressed concerns associated with [the grandmother], the known maternal grandmother, not becoming involved with the children until late winter-early spring of 2006, despite the pendency of the Davie County action from the spring of 2005.

. . . .

15. That [DSS] reasonably attempted to locate [the grandmother] in late summer or early fall of 2005, and [the grandmother] was not located. [The grandmother] moved to South Carolina in November, 2005, and thereafter, she . . . moved to intervene in the spring of 2006. That, [the grandmother and her husband], resided in Kings Creek, South Carolina, during their time there. [The grandmother] returned to North Carolina. [The grandmother and her husband] visited on several occasions in Davie County between April, 2006 and August, 2006. That [the grandmother] suggested that the failure to contact [DSS] was her responsibility and that she did not contact [DSS] to allow for a home study to be effectually completed.

. . . .

26. A bonding assessment was completed in the winter of 2009[3] . . . . The relationship between [the grandmother] and the minor children was more tentative [than their relationship with the Barnes], again consistent with the circumstances then existing and existing prior thereto. The minor children each again were found to interact effectively and efficiently with the [Barnes]. The minor children were noted to be more reserved

---

3. Although the record does not specify the exact date on which the bonding assessment was completed, we presume that this assessment was completed in the beginning of 2009.

with [their grandmother]. . . . [The grandmother] did a very good job of offering encouragement and validation through the activities. [The Barnes and the grandmother] did a good job making the activities age appropriate, offering encouragement and assistance to achieve success, and validating the children's successes. The only difference noted was that the children appeared eager to receive validation from [Mr. and Mrs. Barnes] but did not respond to [their grandmother's] words of validation. . . . There was no evidence of bonding with [the grandmother] and the minor children's responses were limited at best.

The trial court also made the following pertinent conclusions of law:

9.    There are no relatives who are willing and able to provide proper care and supervision of the juveniles in a safe home.

10.   Custody with [Mr. and Mrs. Barnes] and with [the grandmother], with primary placement of the juveniles being with the [Barnes] and that secondary placement of the juveniles being with [their grandmother] is in the best interest of the juveniles.

We hold that the above conclusions of law are not supported by the findings of fact. Both the incorporated findings from the order entered on 12 March 2008 and the trial court's additional findings of fact support a conclusion that placement with the grandmother was not in the children's best interests. The trial court's oral findings of fact, delivered in open court, are essentially identical to the written findings, and thus shed no additional light on the viability of the grandmother as a placement option.

Furthermore, the trial court's conclusions of law are contradictory of each other. In conclusion number nine, the trial court states that "there are no relatives who are able to provide proper care and supervision of the juveniles in a safe home." Yet, conclusion number ten provides that secondary placement of the children with their grandmother—a relative—would be in the children's best interests. Because the trial court's conclusions of law are not supported by the findings of fact, we reverse that portion of the trial court's order granting secondary placement of the juveniles with the grandmother.

### B. Failure to Adhere to Proper Time Line

[2] Caldwell DSS's remaining argument is that the trial court's permanency planning order is invalid because the trial court failed to adhere to the time line required by the juvenile code.

IN RE E.K., K.K., & E.G.

[202 N.C. App. 309 (2010)]

"In any case where custody is removed from a parent, guardian, custodian, or caretaker, the judge shall conduct a review hearing designated as a permanency planning hearing within 12 months after the date of the initial order removing custody[.]" N.C. Gen. Stat. § 7B-907(a) (2009). "In cases such as the present one in which the trial court fails to adhere to statutory time lines, mandamus is an appropriate and more timely alternative than an appeal." *In re T.H.T.*, 362 N.C. 446, 455, 665 S.E.2d 54, 60 (2008).

We agree with Caldwell DSS that the significant delay before the trial court entered its 2009 permanency planning order is deplorable. Only five substantive hearings occurred over the four years that the juveniles were in foster care, and all of those hearings occurred outside of the time frames mandated by the juvenile code. The trial court ordered fifteen continuances prior to the Permanency Planning Review held on 24 October 2007. Thereafter, the trial court ordered ten more continuances before the permanency planning review order was finally entered on 6 May 2009. Of these twenty-five continuances, the majority were not ordered for the purpose of "receiv[ing] additional evidence, reports, or assessments that the court has requested, or other information needed in the best interests of the juvenile and to allow for a reasonable time for the parties to conduct expeditious discovery." N.C. Gen. Stat. § 7B-803 (2009). Furthermore, it does not appear that any "extraordinary circumstances" were present so as to make a continuance "necessary for the proper administration of justice or in the best interests of the juvenile[s]." N.C. Gen. Stat. § 7B-803. While we are cognizant of the demands of the district court's case load and recognize the strains on staffing that the budget crisis has imposed in all sectors, we cannot condone such astonishing disregard for the best interests of the juveniles and the interests of the parties in this matter. However, the proper remedy for Caldwell DSS was to file a petition for writ of mandamus during the delay, rather than raise the issue after additional delay on appeal. Accordingly, we overrule this assignment of error.

For the foregoing reasons, the order of the trial court is

AFFIRMED in part; REVERSED in part.

Judges CALABRIA and STROUD concur.