DAVIS, Judge.
I.D. ("Respondent"), the father of S.D. ("Sarah")[1] , age 12, and S.D. ("Stacy"), age 14, (collectively "the children"), appeals from the trial court's orders ceasing reunification efforts and appointing the maternal grandparents as guardians for the children. On appeal, Respondent argues that the trial court erred in (1) ceasing reunification efforts and making a guardianship appointment because the conditions which led to the children's removal from his care were no longer present; and (2) failing to properly verify the maternal grandparents' financial resources pursuant to N.C. Gen.Stat. § 7B-906.1 before appointing them as the children's guardians. After careful review, we affirm.
Factual Background
On 30 April 2010, Sarah and Stacy were adjudicated neglected juveniles in Sampson County following an incident of domestic violence in their mother's home.[2] The mother's boyfriend hit Stacy with a baseball bat and then Sarah hit him with the bat to prevent him from attacking the mother. The boyfriend was subdued, arrested, and taken to jail. Following the adjudication of neglect, Respondent was granted custody of the children.
On 25 February 2013, the Cumberland County Department of Social Services ("DSS") filed a juvenile petition alleging that Sarah and Stacy were dependent and "neglected and/or seriously neglected" as defined in N.C. Gen.Stat. § 7B-101(15) and § 7B-101(19)(a). When the petition was filed, Respondent and the children were living with Respondent's mother. DSS alleged that the paternal grandmother was mistreating the children, claiming that she "routinely grabs [Sarah] by her face and her arms and left bruises on her on at least one occasion; both children stated they are afraid of the paternal grandmother and they do not want to be alone with her." DSS further alleged that Respondent was aware of the children's claims against his mother but failed to protect them from her and told them that "if they told [someone] about what happens at home, they would have to go to foster care."
In addition to the claims regarding Respondent and his mother, DSS also alleged that the children's mother had a history of substance abuse, unstable housing and unemployment, and mental health issues and that Respondent and the mother frequently engaged in hostile verbal altercations over the telephone. DSS further alleged that Respondent had agreed to a safety plan in which the children would not be left in the care of either the mother or the paternal grandmother unsupervised and then failed to comply with that safety plan. DSS claimed that, prior to its intervention, Respondent was making plans to allow the mother unsupervised weekend visits with the children, which DSS alleged would put them "at risk of irreparable harm" based on the mother's past history, and that the children were repeatedly left in the unsupervised care of the paternal grandmother.
Despite the filing of the juvenile petition, Respondent initially retained custody of the children. A nonsecure custody order was later issued on 1 April 2013, and the children were placed in foster care. On 27 November 2013, the trial court held a hearing to review the children's placement and ordered that the children be placed with the maternal grandmother based on the recommendations of DSS, the guardian ad litem,and the children's therapist. The court noted that the children themselves requested to be placed in their maternal grandmother's care as well.
On 17 December 2013, the trial court entered an order adjudicating the children to be neglected juveniles based on Respondent's and the mother's stipulations that the paternal grandmother "routinely" physically mistreated the children, the children were afraid of her, the children told Respondent about the paternal grandmother's mistreatment of them, and Respondent "d[id] not do anything to stop the paternal grandmother or protect the juveniles." The trial court dismissed the allegations of dependency. The children remained in DSS custody and were placed with the maternal grandmother.
On 17 April 2014, following a permanency planning hearing, the trial court entered an order ceasing reunification efforts and changing the permanent plan for the children to custody with the maternal grandmother. On 12 September 2014, the trial court granted custody and guardianship of the children to the maternal grandmother. Respondent appeals.
Analysis
We initially note that Respondent failed to file timely notice of his intent to preserve his right to appeal the trial court's order ceasing reunification efforts. Pursuant to N.C. Gen.Stat. § 7B-1001(b), "[n]otice of appeal and notice to preserve the right to appeal shall be given in writingby a proper party as defined in G.S. 7B-1002 and shall be made within 30 days after entry and service of the order in accordance with G.S. 1A-1, Rule 58." N.C. Gen.Stat. § 7B-1001(b) (2013) (emphasis added). In this case, Respondent did not give notice to preserve his intent to appeal in writing, and thus, he failed to preserve his right to appeal.
Even assuming arguendothat Respondent had given proper notice to preserve his right to appeal, he also failed to ultimately give proper notice of appeal. N.C. Gen.Stat. § 7B-1001(a)(5)(b) states that a parent who has properly preserved the right to appeal an order which ceases reunification "shall have the right to appeal the order if no termination of parental rights petition or motion is filed within 180 days of the order." N.C. Gen.Stat. § 7B-1001(a)(5)(b) (2013). "Thus, for a respondent-parent who has preserved their right to appeal the order ceasing reunification efforts, the statute renders the order unappealable for a period of 180 days, if no termination of parental rights ... petition or motion is filed. After 180 days have passed without the filing of a TPR petition or motion, the respondent-parent may proceed with their appeal." In re A.R.,--- N.C.App. ----, ----, 767 S.E.2d 427, 428 (2014) (internal citation omitted). Here, the order ceasing reunification efforts was entered on 17 April 2014. Respondent filed his notice of appeal on 19 September 2014, prior to the expiration of the 180-day period. Consequently, his notice of appeal from the order ceasing reunification efforts was premature.
Although Respondent did not properly appeal from the trial court's 17 April 2014 order, he has filed a petition for writ of certiorari requesting appellate review of the trial court's decision to cease reunification efforts. This Court may, in its discretion, issue a writ of certiorari "when the right to prosecute an appeal has been lost by failure to take timely action." N.C.R.App. P. 21(a)(1). Accordingly, in our discretion, we grant his petition for writ of certiorari and proceed to address the merits of the case.
I. Cessation of Reunification Efforts
Respondent first argues that the trial court erred by ceasing reunification efforts. "This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition." In re C.M.,183 N.C.App. 207, 213, 644 S.E.2d 588, 594 (2007).
The purpose of a permanency planning hearing is to "develop a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time." In re M.M.,--- N.C.App. ----, ----, 750 S.E.2d 50, 54 (2013). To achieve this goal, a trial court may order DSS to cease reunification efforts with a parent pursuant to N.C. Gen.Stat. § 7B-507(b). N.C. Gen.Stat. § 7B-507(b) provides, in pertinent part, as follows:
(b) In any order placing a juvenile in the custody or placement responsibility of a county department of social services, whether an order for continued nonsecure custody, a dispositional order, or a review order, the court may direct that reasonable efforts to eliminate the need for placement of the juvenile shall not be required or shall cease if the court makes written findings of fact that:
(1) Such efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time[.]
N.C. Gen.Stat. § 7B-507(b)(1) (2013).
Here, the trial court made the following findings of fact in support of its determination that continuing reunification efforts was futile and "inconsistent with the juveniles' need for a safe permanent home within a reasonable period of time":
12. That among the issues which led to the removal of the juveniles included the Respondents' issues of domestic violence, serious neglect of the juveniles, and the juveniles residing in an injurious environment. That these issues have not been alleviated at this time.
....
17. There continues to be irreconcilable differences between the Respondents. These differences, coupled with the [mother's] continued mental health issues make reunification with the Respondents inappropriate and not in the juvenile's [sic] best interests.
18. Their differences have now spanned two (2) counties and it seems to be getting worse rather than improving. The juveniles are currently in a safe and stable and nurturing environment. It is also a relative placement. They are teenagers with an independent spirit.
....
24. The juveniles participated in therapy sessions with the Respondent Father, the therapist voiced concerns to the Social Worker about how much the juveniles had regressed since the visit with their father.
....
26. The Respondent Father has had a therapeutic visitation session with each of the juveniles since the last hearing in this matter. This session was used to address the death of the Paternal Grandmother....
....
30. That [Stacy] and her father had a very emotional greeting which included a tearful display. The Respondent Father discussed the Paternal Grandmother's transition and the progression of her illness. The Respondent Father was very emotional concerning his mother's death and this led to heightened emotions in the juvenile [Stacy]. She informed her father that she did not want to visit her grandmother's grave site. The Respondent Father expressed understanding and did not pursue the matter any further. [Stacy] also expressed her concerns about not being able to see her grandmother. When she discussed the abuse that occurred within the home, the Respondent Father did not bear any of the responsibility for his mother's actions nor did he apologize. [Stacy] informed her father that she wanted to stay with the Maternal Grandmother. The Respondent Father acknowledged her comment and did not comment further.
....
36. ... Respondent Father [has] been ordered to submit to psychological evaluations as well as psychiatric evaluations. That these evaluations have not been completed to date and the Court remains in need of those evaluations.
37. That the Respondent[ ][is] ... having weekly supervised visitation with the juveniles at the Cumberland County Department of Social Services. That the visits have gone well; however the Social Worker observed the Respondent Father recently making negative comments in front of the juveniles regarding this case. That the Respondent Father had expressed that he was sick of the Social Worker and that the Cumberland County Department of Social Services was just interested in getting child support from him. That additionally the Respondent Father left an explicit voice mail message for the Social Worker in which he stated "You bastard, I hope you are happy my mother is dead now."
38. That the Respondent Father denied making any negative comments in front of the juveniles or leaving the voice message. That the Respondent Father admitted to being upset that his mother had passed and that he was not allowed to inform the juveniles directly of her death. That these behaviors are out of character for what the Court has previously observed of the Respondent Father. That it is clear that the Respondent Father is in need of grief counseling to deal with the recent loss of his mother.
39. The Respondents love their children; however, their differences continue to cause conflict which has spilled over to the children. These issues are of a long standing and enduring nature. They are likely to continue into the foreseeable future.
....
43. The juveniles have been exposed to domestic violence and an injurious environment while in the care of each of the Respondents. They have witnessed and been a part of several traumatic experiences while in the joint, several and individual care of the [mother] and Respondent Father.
44. As a result of this toxic environment created by their parents, they are in need of counseling to address these issues....
....
49. The Respondent Father is not a fit or proper person for care, custody, and control of the juveniles....
....
64. That both of the juveniles are strongly bonded with each of the Respondents; however, the Respondents' inabilities to effectively co-parent have caused a significant amount of stress and trauma for the juveniles. Further, the Respondents tumultuous relationship presents a barrier and directly impedes the reunification process. That the Court specifically references finding Number 20 of the Disposition Order ... as follows:
20. The Court finds that the [mother] has completed a significant number of services. That it is the Court's observation that the [mother] is not anywhere close to being able to parent her daughters. That when the [mother] was questioned about the possibility of the juveniles being reunified with the Respondent Father, the [mother] replied "that ain't happening" in a derisive manner. That when the [mother] was questioned as to her ability to work with Respondent Father as it relates to visitation with the juveniles, the [mother] stated emphatically, no. That it appears to this Court, the [mother] is not willing to put her differences aside for the best interest of the juveniles. That despite the report from the [mother's] therapist, it is abundantly clear to this Court that the [mother] has not made anywhere near the progress that has been opined by the Therapist.
Respondent does not challenge findings 24, 26, 30, 36, 43, 44, or 49, and, as such, these findings are binding on appeal. See Koufman v. Koufman,330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal.").
Respondent argues that the portion of finding of fact number 12 stating that the issues that led to the removal of the children have not been resolved is erroneous. He claims that the only condition that led to the removal of the children from his home was his mother's inappropriate discipline of the children. Respondent notes that his mother is now deceased, and he therefore asserts that this condition has been alleviated. We are not persuaded.
Multiple unchallenged findings of fact demonstrate that several issues which contributed to the removal of the children and the adjudication of neglect remain unresolved. Findings 24, 43, and 44 note that (1) the children have experienced violence and trauma in each parent's care; (2) Respondent has contributed in exposing the children to "a toxic environment," necessitating counseling and therapy to assist the children in coping with these issues; and (3) the children regressed since visiting with Respondent. Finding 30 demonstrates that Respondent still has not taken any responsibility for his mother's abuse of the children leading to their removal from the home. Finding 36 addresses Respondent's failure to complete a psychological evaluation as ordered by the trial court in its 22 January 2014 order. In this earlier order, the trial court expressed its concerns about Respondent's judgment and determined that he was "in need of a psychological evaluation" and a parenting assessment. These findings support the trial court's determination that the conditions which led to the children's removal from his care had not yet been alleviated.
Respondent next contends the findings that he and the children's mother continue to have a tumultuous relationship are not supported by sufficient evidence. We disagree, as the record demonstrates that a no-contact order was required to be entered on 15 May 2013, in which the trial court prohibited Respondent and the mother from having "any communications with each other, to include, physical, telephonic, electronic, or any other means." At a hearing on 17 December 2013, the trial court stated that "the animosity between the Respondents continues to have a negative impact on the juveniles ." A DSS report on 24 February 2014 stated that "the tension between the parents, specifically poor co-parenting, has caused the children a great deal of stress." Consequently, we conclude that findings 17, 18 and 39 are supported by sufficient evidence.
Respondent next contends that finding 37 regarding his negative comments toward the social worker following the death of his mother were "offset" by the trial court's subsequent finding of fact that the comments were "out of character" for him. We note, however, that Respondent does not argue that finding 37 is unsupported. Accordingly, it is binding on appeal. See In re J.K.C.,218 N.C.App. 22, 26, 721 S.E.2d 264, 268 (2012) (where parties did not challenge finding as "not being supported by competent evidence .... [finding is] presumed to be supported by competent evidence and binding on appeal"). To the extent that Respondent claims that this finding was offset by other evidence and findings, this assessment and evaluation of the evidence is within the trial court's purview. See In re Whisnant,71 N.C.App. 439, 441, 322 S.E.2d 434, 435 (1984) (explaining that trial judge's duty is to "weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom").
Finally, Respondent challenges finding 64, where the trial court references a finding contained in its previous order noting the mother's negative attitude towards Respondent. Based on the trial court's reference to this earlier finding, Respondent asserts that any difficulties in co-parenting were due to the mother, not himself, and that it was error to allow the mother's "bad attitude" to sabotage reunification efforts. However, even assuming arguendothat difficulties in co-parenting were primarily due to the mother, the trial court still made sufficient findings to support cessation of reunification efforts. Respondent demonstrated poor judgment by allowing the children to live in an injurious environment, and the court found that he failed to alleviate those conditions. Respondent continues to show a lack of remorse and understanding of the ramifications of the neglect suffered by the children. Consequently, we conclude the trial court did not err by ceasing reunification efforts.
II. Guardianship
Respondent next contends that the trial court erred in granting guardianship to the maternal grandmother. We disagree.
"Appellate review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and whether the findings support the conclusions of law." In re E.K.,202 N.C.App. 309, 312, 688 S.E.2d 107, 109 (2010) (citation, quotation marks, and brackets omitted).
In arguing that appointment of a guardian was improper, Respondent argues once again that the trial court erred by finding that the issues that led to the removal of the children have not been resolved. However, Respondent testified at the permanency planning hearing at which guardianship was granted that "the children were in no danger ever. They were living a good life. They were well taken care of.... My mother never did anything to hurt those children." We note that Respondent stipulated at the adjudication hearing that the allegations of improper discipline by his mother were true and that he failed to stop his mother or protect the children from her. Thus, Respondent's own testimony demonstrates his lack of comprehension as to how his actions, or inaction, impacted and continues to impact the children. Thus, we conclude that the trial court could properly find in its 12 September 2014 order that the conditions that led to the removal of the children had not been alleviated.
Respondent also challenges findings 10 and 16, which state as follows:
10. That the Respondents love their children; however, their differences continue to cause conflict, which has spilled over to the children. These issues are of a longstanding and enduring nature and make it difficult for the Respondents to co-parent.
....
16. That the juveniles are bonded to both Respondent Parents. That the tension between the Respondents causes tension for the juveniles. That the Social Worker last saw the juveniles on or about January 14, 2014; that the juveniles appeared physically fit and emotionally well at that time.
Respondent contends that there was no evidence of any current tension between him and the mother at the time of the hearing. However, as noted by Respondent, the DSS report for the permanency planning review hearing stated:
The tension between the parents, specifically poor co-parenting, has caused the children a great deal of stress.... The parents have been unable to demonstrate a decrease in conflict between the two of them in order to co-parent successfully.
The DSS report constitutes competent evidence sufficient to support findings 10 and 16. See In re R.A.H.,182 N.C.App. 52, 60, 641 S.E.2d 404, 409 (2007) ("[DSS] reports constitute competent evidence, and the trial court properly relied upon them in reaching its finding of fact.").
Respondent next argues that the trial court failed to sufficiently determine whether the maternal grandmother would have adequate resources to care appropriately for the children prior to appointing her as guardian.
Pursuant to N.C. Gen.Stat. § 7B-906.1(g), at the conclusion of a permanency planning hearing, "the judge shall make specific findings as to the best plan of care to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen.Stat. § 7B-906.1(g) (2013). "[W]hen the court finds it would be in the best interests of the juvenile, the court may appoint a guardian of the person for the juvenile." N.C. Gen.Stat. § 7B-600(a) (2013). "We review a trial court's determination as to the best interest of the child for an abuse of discretion." In re D.S.A.,181 N.C.App. 715, 720, 641 S.E.2d 18, 22 (2007).
N.C. Gen.Stat. § 7B-600(c) requires the trial court to "verify that the person being appointed as guardian of the juvenile ... will have adequate resources to care appropriately for the juvenile." This Court has previously held that the trial court is not required to "make any specific findings in order to make the verification." In re J.E.,182 N.C.App. 612, 616-17, 643 S.E.2d 70, 73 (2007). Rather, it is sufficient that the court receive into evidence and consider information addressing the financial resources of the proposed guardians. Id.at 617, 643 S.E.2d at 73. When the trial court makes the required verification at a permanency planning review hearing, the court may "consider information from the parents, the juvenile, the guardian, any person providing care for the juvenile, the custodian or agency with custody, the guardian ad litem, and any other person or agency that will aid in the court's review." N.C. Gen.Stat. § 7B-906.1(c). The trial court may also "consider any evidence, including hearsay evidence ... that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition." Id.
Here, the trial court found as fact that the maternal grandparents "have the means to continue to provide for the juveniles." Respondent's contention that this finding is unsupported by competent evidence is without merit. The social worker testified at the permanency planning hearing that (1) she had looked into the finances of the maternal grandparents; (2) they could afford to care for the children; and (3) they had room in their house for the children. Additionally, the maternal grandmother testified that she had the financial resources to care for the children, specifically referencing her husband's pension. Accordingly, we conclude that the trial court's verification pursuant to N.C. Gen.Stat. §§ 7B-600(c) and -906.1(j) was proper.
Conclusion
For the reasons stated above, we affirm the trial court's 17 April 2014 and 12 September 2014 orders.
AFFIRMED.
Chief Judge McGEE and Judge STEPHENS concur.
Report per Rule 30(e).
Opinion
Appeal by respondent from orders entered 17 April 2014 and 12 September 2014 by Judge Edward A. Pone in Cumberland County District Court. Heard in the Court of Appeals 8 June 2015.

Pseudonyms are used throughout this opinion to protect the privacy of the children and for ease of reading. N.C.R.App. P. 3.1(b).

The children's mother is not a party to this appeal.